FLORENCE YURONIS v. ROLLA WELLS, Receiver of UNITED RAILWAYS COMPANY, Appellant.—17 S. W. (2d) 518.

Division One, May 18, 1929.

*T. E. Francis* and *B. G. Carpenter* for appellant.

SEDDON, C.—Plaintiff (respondent) seeks recovery of damages in the sum of $10,000 for personal injuries suffered in a collision between a street car, operated by the agents and servants of the defendant receiver, and a Ford automobile (of the coupe type), owned and driven by plaintiff. The collision occurred about 8:15 o'clock on the evening of January 22, 1925, at the intersection of Chouteau Avenue and Eighteenth Street (north of Choteau Avenue) in the city of St. Louis. The petition charges the defendant receiver with four acts and omissions of primary negligence, alleged to have been the proximate and direct cause of the collision and of plaintiff's injury: (1) Violation of the so-called "Vigilant Watch Ordinance" of the city of St. Louis, which requires the operative of any street car to "keep vigilant watch for all vehicles . . . either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible;" (2) violation of the so-called "Speed Ordinance" of said city, which regulates the rate of speed of street cars within a prescribed district of the city, including the street intersection herein involved; (3) operation of the street car at a negligent, careless, high and dangerous rate of speed; and (4) operation of the street car without keeping the same under control and without giving any warning of its approach. The petition also charges defendant with negligence under the humanitarian, sometimes called the "last chance," doctrine of negligence. The answer denies generally each and all of the averments of the petition, and charges plaintiff with contributory negligence "in failing to exercise the highest degree of care while operating an automobile on the public streets of the city of St. Louis, in this, to-wit, plaintiff drove her automobile into a street car then and there stopped and standing, when she saw, or by the exercise of the highest degree of care could have seen, said street car stopped and standing, in time thereafter to have avoided the collision." The reply is the conventional general denial of the averments of the answer.

The cause was tried and submitted to a jury, who returned a unanimous verdict in favor of defendant. Plaintiff filed a timely motion for a new trial, setting out several grounds therefor, which motion was sustained by the trial court upon the sole and single ground (specified of record by the trial court in the order granting a new trial) that the trial court had erred in giving a certain instruction, numbered 2, at the request of defendant. The defendant was allowed an appeal to this court from the order of the trial court granting a new trial.

The defendant maintained and operated, at the time in question, a double-track street-car line extending east and west along Chouteau Avenue, and also a double-track street-car line extending northwardly from Chouteau Avenue along Eighteenth Street. At the intersection of these two double-track street-car lines there are switches and curved tracks connecting the two car lines, whereby the cars operated eastwardly on the Chouteau Avenue line may be switched northwardly onto the Eighteenth Street line, and whereby the cars operated southwardly on the Eighteenth Street line may be switched westwardly onto the Chouteau Avenue line. A plat in evidence discloses that the distance between the north curb-line of Chouteau Avenue and the north or outside rail of the north car track on Chouteau Avenue is twenty feet, and that the distance between the south curb-line of Chouteau Avenue and the south or outside rail of the south car track on Chouteau Avenue is twenty feet, and ten inches. Each car track on Chouteau Avenue is four feet, ten and one-fourth inches wide, and the distance between the inside rails of the two tracks is five feet, four and one-fourth inches. Eastbound cars on Chouteau Avenue use the south track, and westbound cars use the north track. The evidence shows that plaintiff was driving her Ford coupe westwardly along Chouteau Avenue, and that defendant's street car had been traveling eastwardly on Chouteau Avenue, and, at the time of the collision, was about to make, or was making, the turn over the curved cross-over track in order to proceed northwardly on Eighteenth Street. The plat in evidence shows the distance between the east and west curb-lines of Eighteenth Street to be approximately fifty feet. Northbound cars on Eighteenth Street, use the east car track on that street, the east or outside rail of which track is seventeen feet, eight inches, west of the east curb-line of Eighteenth Street.

Plaintiff testified that she was driving her automobile westwardly on Chouteau Avenue, and that the outer wheels of the automobile were astride, or straddling, the north or outside rail of the north car track on Chouteau Avenue; that, when she had reached a point approximately a half block east of Eighteenth Street, she observed defendant's eastbound street car approaching Eighteenth Street from

the west on the south car track of Chouteau Avenue; that, as plaintiff approached Eighteenth Street, she brought her automobile to a "dead stop" opposite a fire plug, which according to the plat in evidence, is located about fifteen feet east of the east curb-line of Eighteenth Street, and about twenty-seven and one-half feet east from the easterly or outside rail of the curved cross-over track extending northwardly into Eighteenth Street; that, very shortly after plaintiff had stopped her automobile at a point opposite the fire plug, the eastbound street car came to a "standing stop" just before reaching the cross-over switch on Chouteau Avenue, which, according to the plat in evidence, is located about fifteen feet west of the west curb-line of Eighteenth Street; that, upon the stopping of the street car, plaintiff then started her automobile and proceeded westwardly toward the intersection of Eighteenth Street; that thereupon the street car started to make the turn over the cross-over track from Chouteau Avenue into Eighteenth Street; that, when plaintiff observed the street car approaching around the curved cross-over track, her automobile was in high gear and was then traveling at a speed of about eight miles an hour; that she immediately threw the automobile out of gear and applied both the foot and the emergency brakes; that the automobile was then within five to ten feet from the east rail of the curved cross-over track; that the left-hand front end of the automobile collided with the overhang, or with the front fender, of the street car; that, in plaintiff's judgment, the street car "was coming fifteen to eighteen miles an hour when it hit me;" that plaintiff "should judge" that the street car was about eight feet away from the automobile when plaintiff saw the street car "start going to come toward her;" that no gong or other warning was given to apprise plaintiff of the starting or movement of the street car; that the collision occurred before the front wheels of the automobile had reached the east rail of the curved cross-over track; that the head lamps were lighted on both the automobile and the street car; that the force of the collision did not "knock the automobile anywhere; just stopped it;" and that plaintiff was thrown through the left-hand door of the automobile upon the street pavement and was thereby injured.

The testimony of plaintiff's husband, who was a passenger in plaintiff's automobile, tended to corroborate the testimony of plaintiff, except that plaintiff's husband "judged" the speed of the street car, as it came around the curved cross-over track, to be "about eighteen or twenty miles an hour, something like that," and that the automobile was about nine feet east of the east or outside rail of the easterly cross-over track when the street car started to make the turn into Eighteenth Street. He testified further that the street

car moved about four or five feet after the impact with the automobile.

Defendant's motorman testified that the street car came to a full stop immediately west of the switch on Chouteau Avenue leading to the cross-over track; that thereupon he threw the electrical switch by means of an appliance upon the front platform of the street car, and started the car around the easterly curved track leading from Chouteau Avenue into Eighteenth Street; that, after the street car had started, and when the front end of the street car was within four or five feet of the north rail of the westbound or north track on Chouteau Avenue, he saw the approaching automobile, whereupon he immediately brought the street car to a "dead stop;" that the street car rounded the curved cross-over track at a speed of not more than one or two miles an hour; that the plaintiff's automobile was approaching the curved cross-over track at a speed of about thirty-five miles an hour; that the street car was fully stopped and was not moving when the automobile collided with the street car; that the left front end of the automobile struck "a little bit to the left of the front headlight" of the street car and broke the headlight; and that the overhang of the fender, or front end, of the street car was about five feet north of the north rail of the north or westbound track on Chouteau Avenue when the automobile collided with the street car. The motorman testified also that the gong of the street car was sounded as the street car started to round the curved cross-over track.

The conductor of the street car testified that the street car was "standing still" at the time of the impact of the automobile; that he "felt the stop first and then the impact;" that the impact made a "considerable noise or crash;" that it is his opinion that a street car could not be driven around the curved cross-over track at a speed of eighteen or twenty miles an hour without derailing the street car; and that, according to his judgment and experience, a street car moving at the rate of speed of three miles an hour around the curved cross-over track could not be stopped instantly, but might be stopped in five or six or eight feet.

Two passengers on the street car at the time of the collision testified on behalf of defendant that the street car had been stopped and was standing "dead still" at the time the automobile collided with the street car, and that the motorman had been sounding the gong as the street car was rounding the curved cross-over track.

At the conclusion of all the evidence, defendant requested the trial court to give to the jury a peremptory instruction in the nature of a demurrer to the evidence, which peremptory instruction was refused by the trial court. Thereupon plaintiff requested, and the trial court gave, five instructions, numbered 3, 4, 5, 6 and 7, re-

spectively. Instruction 3 submitted plaintiff's case to the jury upon the issue of defendant's violation of the "Vigilant Watch Ordinance" of the city of St. Louis; Instruction 4 submitted to the jury the issue of common-law negligence in defendant's operation of the street car at a high, dangerous and negligent rate of speed; Instruction 5 submitted to the jury the issue of negligent failure on the part of defendant's operatives to warn plaintiff of the starting, and of the approach, of the street car; Instruction 6 defined the term "ordinary care," as used in the several instructions; and Instruction 7 was an instruction on the measure of damages. So far as the record herein discloses, plaintiff did not present or request the giving of any instruction which would have submitted to the jury the assignment and issue of defendant's negligence under the humanitarian, or "last chance," doctrine of negligence. At defendant's request, the court gave an instruction, numbered 2, which withdrew from the consideration of the jury the assignment of defendant's negligence under the humanitarian doctrine (the instruction quoting, *in haec verba,* the assignment of such negligence as pleaded in the petition), and which told the jury "that plaintiff is not entitled to recover under and upon that assignment of negligence."

I. The appellant (defendant) assigns error in the action of the trial court in making and entering the order granting a new trial, in which order the trial court specified of record, as the single and sole ground on which a new trial was granted, that the trial court had erred in giving the defendant's requested instruction, numbered two. As has been said hereinabove, defendant's instruction 2 withdrew from the consideration of the jury the assignment of defendant's negligence under the humanitarian, or last chance, doctrine, and told the jury that plaintiff is not entitled to recover under and upon that assignment of negligence. While plaintiff, by the averments of her petition, had charged defendant with several negligent acts and omissions, including negligence under the humanitarian doctrine, nevertheless, the evidence, in our opinion, viewed in a light most favorable to plaintiff, and allowing to plaintiff every reasonable inference and intendment therefrom, wholly failed to establish or to make a case for plaintiff upon said assignment and theory of defendant's negligence under the humanitarian doctrine. Furthermore, it seems apparent that plaintiff deemed the evidence wholly insufficient to make out, or to establish, a case upon such assignment and theory of defendant's negligence, inasmuch as the record shows that plaintiff's counsel stood mute and asked no in-

struction submitting to the jury such assignment and theory of defendant's negligence. By her failure to request the trial court to submit to the jury, as a live issue in the case, and by an appropriate instruction, the assignment and issue of defendant's negligence under the humanitarian doctrine, the plaintiff abandoned such assignment and issue of defendant's negligence, and the humanitarian, or last chance, doctrine fell out of the case. [Keele v. Railway Co., 258 Mo. 62, 75; Dietzman v. Screw Co., 300 Mo. 196, 215; Nahorski v. Railway Co., 310 Mo. 227, 237; Denkman v. Fixture Co. (Mo. Sup.), 289 S. W. 591, 596.] Plaintiff, by her course of action upon the trial and submission of her case to the jury, having abandoned her assignment and theory of defendant's negligence under the humanitarian doctrine, she was not entitled to a consideration of that assignment and issue of negligence by the jury, and is estopped, by her course of action on the trial, to complain of defendant's Instruction 2, which by its terms specifically withdrew such assignment of defendant's negligence from the consideration of the jury. [Nahorski v. Railway Co., 310 Mo. l. c. 238.] Plaintiff, having elected to abandon her theory and assignment of defendant's negligence under the humanitarian doctrine, and having thereby permitted such assignment and theory of negligence to drop out of the case, we think that it was not error on the part of the trial court to specifically withdraw such assignment and theory of defendant's negligence from the consideration of the jury, as was done by defendant's instruction numbered two.

While it is true that this court has held, in several recent cases, that the refusal by the trial court of requested instructions, designed to withdraw from the consideration of the jury abandoned issues, works no harm and does not constitute error, the reason assigned for our holding in such cases is that the giving of such withdrawal instructions (in the form and language used in those cases) might tend to confuse and mislead the jury with respect to the unabandoned issues actually submitted, and with respect to the application of the evidence bearing upon the unabandoned and submitted issues. [Kleinlein v. Foskin (Mo. Sup.), 13 S. W. (2d) 648, 657; Reith v. Tober (Mo. Sup.), 8 S. W. (2d) 607, 611; Schulz v. Smercina (Mo. Sup.), 1 S. W. (2d) 113, 119; Dietzman v. Screw Co., 300 Mo. 196, 215.] The converse of the rule announced in the cited cases, however, does not necessarily follow, namely, that the giving of instructions (in appropriate form and language) withdrawing abandoned issues from the consideration of the jury constitutes error in every such case. [Nahorski v. Railway Co., 310 Mo. l. c. 238.] In the instant case, we do not see wherein the giving of defendant's Instruction 2 possibly could have confused or misled the jury with respect to the

unabandoned issues actually submitted, or with respect to the application of the evidence bearing upon such unabandoned and submitted issues. The instruction made no reference whatsoever to the facts and circumstances in evidence, and withdrew from the jury's consideration none of the evidence in the cause, but merely told the jury (to quote the instruction *in haec verba*) that "plaintiff is not entitled to recover under and upon that assignment of negligence wherein it is charged that the 'agents and servants (of defendant) saw, or by the exercise of ordinary care on their part the said vehicle could have been seen by them, and they became, and might have become, aware of the danger to which said vehicle and plaintiff were then exposed in time, with the means and appliances at hand and with safety to the passengers and property entrusted in their care, to stop said car or slacken the speed and prevent striking said vehicle and injuring plaintiff, but said agents and servants negligently and carelessly failed so to do,' and this assignment is herewith withdrawn from your consideration." We are of opinion that the giving of such instruction was not error upon the part of the trial court, and we are also of opinion that the trial court erred in granting a new trial upon the specified ground that the court had erroneously given said instruction.

II. The next question which is obtruded herein is whether the sole and single ground specified of record by the trial court as reason for the granting of a new trial brings the action of the trial court in granting a new trial within that sound judicial discretion which should not be disturbed upon appeal, unless it is manifest that such discretion has been abused. In Loftus v. Railway Co., 220 Mo. 470, 479, this court, en banc, said: "The further contention is made that this court should not disturb the discretion exercised by the trial court in granting the new trial. In other words, that the granting of a new trial rests within the sound discretion of the trial court. In the broad sense, the granting of a new trial does rest within the sound discretion of the trial judge, and this discretion, like all judicial discretions, should not be disturbed when properly exercised. . . . Upon the facts of the case at bar a verdict for either party could be sustained, but the discretion of the trial judge was not directed to the facts, so far as the question now before us is concerned. He was passing judgment upon a clear question of law, and we have concluded that his judgment on that question was erroneous. When the judicial act is directed solely to a question of law and the act is erroneous, it does not fall within the rule of the exercise of sound judicial discretion. There is no discretion as to the law of a case. Nor can

1048

there be an exercise of a sound discretion as to the law of a case. So that when we speak of the granting of a new trial being within the sound discretion of the trial judge, we have no reference to a case where the new trial is granted solely upon the ground that the law has been erroneously given, when in fact it has been properly given.''

Again, in City of Kennett v. Construction Co., 273 Mo. 279, 290, Division Two of this court said: ''In addition, it is not inappropriate, in defining the limit of our review, to say that the doctrine of a wide discretion with which courts are held, in a certain class of cases, to be vested in granting new trials, is inapplicable here. The giving of an instruction as to the measure of damages was the court's reason for its action. This was a matter of law. There can be no discretion as to the law of a case. It is only when the court's ruling is directed to the facts that the exercise of discretion is permissible.''

In the instant case, plaintiff, by reason of her silence with respect to the submission of the pleaded assignment of defendant's negligence under the humanitarian doctrine, is deemed, under the holdings and decisions of this court, to have abandoned such assignment and issue of negligence, and such assignment and issue of defendant's negligence thereupon dropped out of the case. In other words, the abandoned issue was not considerable by the jury as a live issue of fact. Defendant's Instruction No. 2 merely told the jury, in effect, that they were not concerned with the determination of such abandoned issue, wherefore such assignment and issue of defendant's negligence was thereby withdrawn from their consideration. The giving of said instruction, therefore, was wholly a matter of law, and whether or not the action of the trial court in giving said instruction was erroneous was likewise wholly a matter of law. Consequently, there was no discretion to be exercised by the trial court as respecting the correctness or the error of its action in the giving of said instruction, and the sole ground specified of record by the trial court in support of the order granting a new trial presents only a question of law, which is reviewable, as a matter of law, by this court upon an appeal taken from the order granting the new trial.

III. It has long been the well-established rule of practice in the jurisprudence of this State that, where the trial court has specified of record, as required by the statute (Sec. 1454, R. S. 1919), the ground or grounds on which a new trial is granted, it must be presumed, upon an appeal from the order granting the new trial, that no other ground was found in the successful applicant's motion for a new trial warranting or justifying the granting of a new trial; and it is also to be presumed, upon such an appeal, that the applicant's motion for a new trial has been over-

ruled by the trial court as to all grounds other than those specified of record in the order of the court granting a new trial. Furthermore, it is the well-settled rule of practice in this State that the burden of overcoming such presumptions rests upon the *respondent* in an appeal from an order granting a new trial.

The prevailing rule was thus clearly announced by this court, en banc, in Bradley v. Reppell, 133 Mo. 545, 560, wherein we said: "The law requiring that in every order granting a new trial the grounds upon which the new trial is granted shall be specified of record, and the trial court having specified only these two, it must be presumed that no other ground was found in the motion for sustaining the application for a new trial. The effect of its action in sustaining the motion on the grounds specified of record was to overrule the motion as to the other grounds therein set out. The court may have erred in overruling the motion as to some of these other grounds; but the presumption is that the court acted correctly in so ruling, and the burden of showing that it committed error devolved upon the *respondents,* against whom such adversary ruling was made, and if they would have this court review that action they must point out some other ground in the motion upon which it ought to have been sustained."

Again, it was said by Division Two of this court in City of Kennett v. Construction Co., 273 Mo. 279, 287: "The general rule as to the extent to which this court will review a record upon an appeal from an interlocutory order, as in the instant case, is as follows: When an order for a new trial is granted for a specific reason, the appellant assumes no other burden of showing error than that which prompted the trial court's action. If other grounds are relied on to sustain the order, which have been preserved in the record, *the respondent must call the appellate court's attention to the same or they will not be considered.* [State ex rel. Bank v. Ellison, 266 Mo. l. c. 432; Benjamin v. Railroad, 245 Mo. l. c. 609; Emmons v. Quade, 176 Mo. l. c. 27; Millar v. Madison Car Co., 130 Mo. 523.] The purpose of this rule is salutary. It sharpens the issues in enabling the appellant to directly combat the ruling of the trial court, and limits the review, upon appeal, to the reasons for such ruling, instead of requiring a consideration of all the issues raised during the trial." (Italics ours.)

This court, en banc, in Kersten v. Hines, 283 Mo. 623, 634, again announced the prevailing rule in this jurisdiction, thus: "In an appeal from such an order [granting a new trial] the burden is upon the appellant to show that the ground upon which the court put the order does not support it; and 'as to the other grounds of the motion [for a new trial], the presumption will be indulged that the court's ruling was right until the *respondent* shows the contrary

[State ex rel. v. Thomas, 245 Mo. 1. c. 73, 74.] The effect of the order was to overrule all other grounds except that therein specified.''

The respondent (plaintiff) herein has neither appeared in this court by way of an oral argument of this appeal, nor has she filed any printed brief and argument herein contesting appellant's claim of error respecting the order granting a new trial, and respecting the ground specified of record by the trial court for granting the new trial, or showing to this court that plaintiff's motion for new trial was properly sustainable upon other grounds set out in said motion. In the absence of such a showing by respondent, we must indulge the presumption that the plaintiff's motion for a new trial was overruled by the trial court as to all of the several grounds set out therein, save and except the sole and single ground specified of record by the trial court in its order granting a new trial. The presumption must also be indulged that the action of the trial court was right and proper in overruling the plaintiff's motion for a new trial as to all grounds set out therein other than the single ground specified of record in the court's order. As respects the sole and single ground specified of record in the trial court's order granting a new trial, we think that the trial court was in error, and that the specified ground was wholly insufficient, as a matter of law, to support the order of the trial court granting a new trial.

It follows, therefore, that the order of the circuit court granting a new trial should be reversed, and that the cause should be remanded to the said circuit court with directions to reinstate the verdict of the jury therein and to enter a judgment in favor of defendant (appellant) in accordance with said verdict. It is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.