TRANSAMERICAN FREIGHT LINES, INC., A CORPORATION, RESPONDENT, v. MONARK EGG CORPORATION, APPELLANT.—161 S. W. (2d) 687.

Kansas City Court of Appeals. May 4, 1942.

*Harry F. Murphy* for respondent.

*Johnson, Lucas, Graves & Fane* for appellant.

BLAND, J.—Plaintiff is a common carrier by motor vehicle of property for hire in interstate commerce, and sues for the recovery of freight charges due from the defendant to it for a number of shipments of eggs.

Defendant, in its answer, admitted that it owed the amount of the charges, but asked to be credited for the amount of its loss suffered by reason of a decline in the market value of a certain shipment of eggs from Kansas City to Pittsburgh, Pennsylvania. The loss was alleged to have been caused by the failure of plaintiff to complete the carriage within a reasonable time. A balance of $158.40 was claimed by defendant.

The case was tried before the court without the aid of a jury, resulting in a judgment in favor of plaintiff on its cause of action and against defendant on its counterclaim. Defendant has appealed.

The facts in relation to defendant's counterclaim show that plaintiff is subject to the provisions of the Motor Carriers Act and the rules promulgated thereunder by the Interstate Commerce Commission; that the eggs in question were transported under a bill of lading in form prescribed and approved by the Interstate Commerce Commission.

The shipment of eggs in question was delivered to plaintiff by defendant between 6 and 7 P. M. of Saturday, December 31, 1938, but it did not leave Kansas City until the afternoon of the following day. It arrived at its destination about 9 A. M. of January 5th, 1939.

Plaintiff's witness, Swallow, testified that he was its manager in Kansas City and that it had a schedule for service from Kansas City to Pittsburgh but not a guaranteed schedule; that the schedule was for the arrival of a shipment in Pittsburgh "ordinarily . . . the fourth day out of Kansas City;" that the eggs in question arrived in Pittsburgh in the usual time, or, on the afternoon of the fourth day; that plaintiff operates a truck line directly from Kansas City to Pittsburgh and it would have been possible to have transported the shipment in question without reloading the eggs in transit; that the shipment was transferred from one of plaintiff's trucks to one belonging to the Anderson Motor Freight Lines at Cleveland. However, the whole transportation was over plaintiff's lines, as it leased the equipment of the Anderson Motor Freight Lines; that it would take possibly three hours to transfer the eggs in question. There is no explanation as to why the eggs were transferred.

Defendant's evidence concerning the circumstances of the shipment was testified to by Mr. Rosenblum, its president and general manager, and Mr. Rybolt, who was the commercial agent or freight solicitor for plaintiff in Kansas City. However, at the time of the trial Rybolt was no longer in plaintiff's employ. These witnesses testified, to the effect, that about noon of Saturday, December 31,

1938, Rybolt, having solicited defendant for the business, it agreed to make the shipment over plaintiff's line providing that the eggs would arrive in Pittsburgh on the following Tuesday morning. Rybolt informed Rosenblum that plaintiff did not permit its trucks to travel on the highways on New Year's Eve, or, on Sundays or holidays, and that unless the rule could be waived in this instance the shipment could not be made so as to arrive in Pittsburgh on Tuesday morning. He told Rosenblum that he would find out if the rule would be waived. Rybolt then went to confer with Swallow, who called plaintiff's St. Louis office, and it informed the latter that the load would be in Pittsburgh in 36 hours after its arrival in St. Louis. Swallow then wired Detroit, plaintiff's home office, to get authority to transport the loan on Sunday. Such authority was received later that day and Rybolt so reported to Rosenblum and stated that the eggs would be in Pittsburgh in 36 hours after their arrival in St. Louis. Before the eggs were tendered to plaintiff for shipment Rybolt promised Rosenblum that there would be no transfer to another carrier enroute.

Defendant had sold the eggs to the consignee and upon their arrival in Pittsburgh it received a telegram from the consignee rejecting the shipment because of delay. Rosenblum immediately telephoned Swallow and told him of the rejection and stated that it "looked like there was a load of eggs that he had bought." Swallow then asked him what the defendant could do with them and Rosenblum replied that, while the market had declined quite a bit, he would try to get the consignee to take the eggs on some arrangement and that he might be required to allow the consignee as much as 60c per case. Swallow then told Rosenblum to settle the best he could and he later telephoned the consignee and settled with him on the basis of the payment of 45c per case. There were 336 cases in the load. Rosenblum reported the settlement to Swallow, who stated that he was very happy over it and thought the company would be. Rosenblum then wrote the plaintiff a letter confirming these telephone conversations and making a written claim for $158.40.

Plaintiff's general claim agent, on April 4, 1939, wrote defendant as follows:

"Had these shipments moved during the week, excluding Sunday or Holidays there is no doubt but that they would have reached destination in our usual transit time."

The decline in the market and the amount of the loss are not contested, but plaintiff denies responsibility for the loss.

There is some conflict in the testimony as to the "usual transit time" between Kansas City and Pittsburgh. As above stated, Swallow testified that it was four days. Other witnesses for plaintiff testified to the same effect. Rybolt testified that it was forty-four hours; Rosenblum that it was forty-eight hours, but, under ordinary circumstances,

the third morning. Other witnesses testifying for the defendant stated it to be thirty-seven hours, or the third morning.

Twenty separate findings of facts were requested of the court by the defendant. Seven were given and 13 were refused. Seven declarations of law were requested by the defendant, one of which was given and six were refused. From an examination of the findings of facts and declarations of law, refused and rejected, it appears that the court found that Rosenblum told Rybolt that he would engage the plaintiff to transport the load of eggs only if he were assured of delivery to the consignee on or before Tuesday, January 3, 1939; that before defendant engaged plaintiff to transport the eggs in question Rybolt advised defendant's president that he, Rybolt, had no authority to waive said rule concerning no Sunday or holiday movement of plaintiff's trucks, but he would ask his superior, plaintiff's Kansas City manager, to waive the same; that plaintiff received the eggs on December 31, 1938, between 6:00 and 7:00 P. M.

However, the court refused to find that plaintiff's Kansas City manager, Swallow, telephoned plaintiff's home office in Detroit for such authority and received the same and that Rybolt advised Rosenblum that plaintiff's home office had waived its rule against moving its trucks on the highways on Sundays and holidays with respect to the shipment in question and that permission had been granted to move the load in question out of Kansas City on Saturday night, December 31, 1938, and informed Rosenblum that said load would go straight through to Pittsburgh without the same being transferred to another truck, and that said load would be delivered to the consignee on or before Tuesday, January 3, 1939; that such representations induced defendant to engage plaintiff to transport the load of eggs in question; that Rybolt and Swallow knew that defendant had so engaged plaintiff with such representations.

The court refused to find that plaintiff failed to deliver the load of eggs in question to the consignee within plaintiff's usual transit time; and refused to find that defendant's president informed plaintiff's Kansas City manager by telephone that the consignee had refused to accept the load of eggs in question because of the delay in their delivery; that the manager authorized Rosenblum to deduct 60c per case from the selling price of the eggs on account of the delay in transporting the same and promised Rosenblum that plaintiff would compensate defendant for any loss sustained by reason of allowing the consignee to deduct not more than 60c per case from the selling price of the eggs.

The court did find, however, that the eggs were not tendered by plaintiff to the consignee until 9 A. M. of January 5, 1939, and that a settlement was made on the basis of deducting 45c per case. The court refused to find that the delay in transporting the eggs was due to the carelessness and negligence of the plaintiff; that plaintiff was

negligent in permitting the eggs to remain in Kansas City from the time of their delivery to the plaintiff Saturday afternoon until the following afternoon; that plaintiff was negligent in having caused the eggs to be transferred from one truck to another in Cleveland, Ohio; that plaintiff was negligent in failing to complete the transportation and delivery of the eggs to the consignee on or before January 4, 1939.

Defendant insists that the court erred in not giving all of its offered findings of facts and declarations of law. In this connection, it says that the uncontradicted evidence shows that defendant delivered the eggs to plaintiff for shipment only after Rybolt had told Rosenblum that plaintiff's home office had granted authority to its Kansas City office to move the eggs in question on New Year's Eve and to continue to move the same on the Sunday which followed and that plaintiff's manager had said that the load would go straight through to Pittsburgh without transferring the same to another truck and that the eggs would be delivered to the consignee not later than January 3, 1939.

It appears that the counterclaim was based upon negligent delay of the shipment and not upon a special contract for the shipment. So defendant's contention should be denied even if such a special contract, if it had been made, would have been a valid one. It will be remembered that the bill of lading provided that the shipment was not being transported by any particular schedule or vehicle, or for any particular market, or otherwise, than with reasonable dispatch.

Aside from this, while the request for findings of facts were not in the form contemplated by section 1103, Revised Statutes Missouri, 1939, the parties and the court treated it as sufficient and in making the request defendant conceded, as a matter of law, that the case was one to be decided as one of fact. [Smith v. Universal Credit Co., 137 S. W. (2d) 489.] However that may be, the court was not required to believe the testimony of Rosenblum and Rybolt, even though it was uncontradicted (Lacy v. National Finance Corporation, 79 S. W. (2d) 1078, 1080; Connole v. East St. Louis & S. Ry. Co., 102 S. W. (2d) 581), and the fact that Swallow was present and did not dispute the testimony of Rosenblum and Rybolt in regard to the above and the other particulars, does not change the rule in any respect. Defendant contends, in this connection, that the failure of a party to call an available witness possessing peculiar knowledge concerning facts essential to his case, or to examine such witness as to the facts covered by his special knowledge, especially if the witness would naturally be favorable to the party's contention, gives rise to an inference that the testimony of such a person would not sustain the contention of the party, citing C. J., pp. 115, 122; Guthrie v. Gillespie, 6 S. W. (2d) 886, 890; Sullivan v. Gideon & N. I. R. Co., 271 S. W.

983; Bryant v. Lazarus, 235 Mo. 606, 612. However, such inference is not equivalent to direct evidence and is not conclusive, its probative value being for the trier of the fact. [22 C. J., pp. 120, 121, 122.]

It is insisted that the court erred in refusing to give defendant's finding of facts and declarations of law to the effect that plaintiff failed to deliver the load of eggs in question to the consignee within plaintiff's usual transit time; that plaintiff was negligent in having permitted the eggs to remain in Kansas City from Sunday afternoon until the following afternoon; that plaintiff was negligent in causing the eggs to be transferred from one truck to another at Cleveland, Ohio; that it was negligent in failing to complete the transportation and delivery of the eggs to the consignee on or before January 4, 1939; that the delay in transporting the load of eggs in question was due to the carelessness and negligence of the plaintiff.

In this connection defendant says that, even taking the evidence in its most favorable light to the plaintiff, that is, that the usual transit time was for delivery on the fourth day, the eggs were not delivered until the fifth day; that this delay was the result of plaintiff permitting the eggs to remain in Kansas City for twenty-four hours and that it was not necessary to transfer them to another truck in Cleveland.

We understand from the testimony, especially the testimony of plaintiff's witness, Swallow, that the usual transit time means the usual time when no Sunday or holiday intervenes, or, no rule concerning the same is observed. In this instance the delay of twenty-four hours was due to the Sunday intervening after the eggs were delivered for shipment. The eggs actually arrived on the 4th day after they left Kansas City. Defendant had knowledge of the fact that plaintiff had a rule not to operate its vehicles on New Year's Eve, Sundays and Holidays, and the court refused to find facts showing a waiver of this rule on the part of the plaintiff. As far as transferring the eggs from one truck to another is concerned, there is no evidence that this required more than three hours, and there is no evidence that this delay affected, in the least, the matter of defendant's loss. Aside from this, it was not sufficient for defendant to have shown mere delay, but a negligent delay. In this defendant failed, under the findings of facts. [Inzerillo v. Chi. B. & Q. R. Co., 35 S. W. (2d) 44, 47; Harrison v. Chi. & Alton R. Co., 239 S. W. 871, 873; Smothers v. Chi. R. I. & P. Ry. Co., 15 S. W. (2d) 884, 886; Neely v. Hines, 237 S. W. 906; Johnson v. Mo. Pac. R. Co., 249 S. W. 658; Holland v. Hines, 234 S. W. 366, 368.]

We have examined Gulf M. & N. R. Co., 134 S. W. (2d) 917 (a Tennessee appeal) and like cases cited by defendant, and find them not in point.

The judgment is affirmed. All concur.