JACKIE BIRMINGHAM, by his Next Friend NELLIE BIRMINGHAM, Respondent, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 41385—235 S. W. (2d) 322.

Division Two, December 11, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, January 8, 1951.

*Charles L. Carr, Hale Houts, J. D. James, Alvin C. Randall* and *Hogsett, Trippe, Depping, Houts & James* for appellant.

*Robert L. Jackson* and *Alfred H. Osborne* for respondent.

[323] ELLISON, P. J.—The defendant-appellant Service Company appeals from an order of the Jackson county circuit court sustaining the plaintiff-respondent's motion.for new trial on one of the grounds assigned therein, namely, that the court had erred in giving to the jury one of appellant's requested instructions later set out herein. That issue, in its several aspects, is the main point in controversy on this appeal. But appellant further contends respondent failed to make a case for the jury on the issue of its negligence, and that he was also guilty of contributory negligence as a matter of law.

The underlying facts were that respondent, a boy nine years old, was struck and injured by the automobile of one Bedford while walking or running across Lexington Avenue in Kansas City about 5:30 p. m. [324] on November·23, 1945. Respondent, by his mother and next friend, first brought a damage suit for his injuries against the motorist Bedford. Later that petition was amended to include the appellant Service Company as co-defendant, on the theory that one of its busses had passed so close to the boy as to cause him to move into the path of Bedford's automobile. The case was compromised and settled with Bedford's insurer by the boy's mother, guardian and curator, for $2100, and was dismissed as to Bedford; leaving the appellant Service Company as sole defendant. The cause was tried on a second amended petition, and nine members of the jury returned a verdict for the defendant. The court granted a new trial to the plaintiff-respondent on the sole ground that it had "erred" in giving to the jury defendant-appellant's requested Instruction No. 7 as follows:

"You are instructed that even though you find defendant was negligent as submitted in other instructions here, if you further find that plaintiff has made a settlement in full with the T. H. Mastin Insurance Company or with Francis G. Bedford on account of the

injuries received by plaintiff, or if you further find that plaintiff has been fully compensated by the said T. H. Mastin Insurance Company or by the said Francis G. Bedford for any and all injuries he received, then your verdict will be in favor of the defendant and against the plaintiff.''

The ''settlement'' referred to in the instruction was effected by a written release and the bank draft of Bedford's liability insurer, the Mastin Company, for $2100. The court excluded part of the written release. The part appearing in the record shows it was captioned ''Partial Release''; that it was signed by plaintiff's mother as his guardian and curator with the sanction of the Probate Court; that it dealt with plaintiff's claim for personal injuries asserted in the instant damage suit then pending in the circuit court against Bedford and the defendant-appellant Service Company; that it released only plaintiff's claim of Bedford's personal liability to him, and expressly reserved the right to proceed against the Service Company; and that the consideration was $2100. The draft, dated one day later, was for $2100, payable to plaintiff's guardian and her attorneys, and recited it was in ''Full Settlement.''

The appellant Service Company's first contention here is that the trial court, in granting the respondent a new trial on the sole ground that the above Instruction No. 7 was erroneous, ruled on a ''legal'' rather than a ''discretionary'' ground, and thereby eliminated its discretionary power to grant the new trial on any other ground, citing Yuronis v. Wells, 322 Mo. 1039, 1046-8(1-3), 17 SW. (2d) 518, 521-3(1-6).

Secondly, appellant makes the point that since the motion for new trial was sustained more than 30 days after the verdict and judgment were rendered (which is true) the trial court could not sustain it on its own initiative on any ground not raised in the respondent's motion for new trial. That, also is true. Sec. 119, Civil Code.

And thirdly appellant contends there was evidence that in the foregoing settlement of plaintiff's claim his guardian and curator acknowledged *full satisfaction thereof,* and thereby released the appellant Service Company, as well as the other defendant, Bedford, in whose behalf the settlement was made. On this point appellant invokes Sec. 3658, R. S. 1939, Mo. R. S. A., which permits the release of one joint tort-feasor without releasing the others, but does not change the rule that there can be but one *satisfaction* for a single wrong; and that an acknowledgment of full satisfaction in a settlement with one joint tort-feasor releases the others. On that point several decisions are cited.[1]

---

[1]Abbott v. City of Senath (Mo. banc) 243 SW. 641, 642(3); McEwen v. Kansas City Pub. Serv. Co. (Mo. App.) 225 Mo. App. 194. 197-8(4), 19 SW. (2d) 557, 558; Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 SW. (2d) 543, 556; Kahn v. Brunswick-Balke-Collender Co. (Mo. App.) 156 SW. (2d) 40, 42.

We understand counsel's contention to be this. The draft for $2100 issued by Bedford's insurer to the plaintiff's mother and guardian recited it was "Full Settlement." Appellant asserts this meant the draft was [325] in full settlement for plaintiff's whole claim for his injuries, and released not only Bedford, the insured, but also the defendant-appellant Service Company, by virtue of Sec. 3658, supra. This contention is made notwithstanding the fact that the "Partial Settlement", a separate document stating the terms of the settlement, expressly recited it released Bedford only, and reserved plaintiff's right to proceed against the appellant Public Service Company.

We think there is no merit in this contention. In the Abbott case invoked by appellant, supra,[1] the plaintiff had been injured through the falling of an awning over a public sidewalk. He made a verbal settlement with one tort-feasor, the building owner, for $500, and gave it a receipt stating that sum was "in full of all demands, from injury received by the falling of the awning." Then he sued the city for the same injuries. This court held the plaintiff's foregoing acknowledgment of the receipt of the $500 was more than a mere receipt; that it was in fact a release acknowledging payment of the $500 in full of *all* demands for his *injury*; and that it did not contain any suggestion the $500 was paid merely as part compensation for his injury. It was held he was precluded from recovering against the city.

In the McEwen case[1] cited by appellant, the plaintiff was struck by an automobile while attempting to board a streetcar. Similarly there, she made an oral settlement with the motorist, Thompson, and signed a written release as follows: "We, the undersigned, Allen A. McEwen and Mary A. McEwen (his wife) hereby acknowledge compensation in full settlement for an automobile accident on January 3rd, 1926, at 19th and Prospect Ave. in which Mary A. McEwen was badly injured by W. H. Thompson's car, and we hereby release him from all further liability in the matter." The decision held the receipt clearly would have operated as a full settlement for plaintiff's injuries as to both tort-feasors if it had not added specifically that she released the motorist from all further liability, without mentioning the streetcar company. But on authority of the Abbott case, supra, the court's final conclusion was that the streetcar company also was released.

The Kahn case[1] was a personal injury damage suit founded on a collision between a streetcar operated by one defendant, in which the plaintiff was riding, and an automobile owned by one and operated by another of the two remaining defendants. The plaintiff settled

her *case* with the defendant streetcar company for $750, and filed an amended petition against the two other defendants. The Court of Appeals held that since the settlement was "on the total amount for the lawsuit that was pending" against all three defendants when it was made—which was undisputed by the streetcar company's lawyer—therefore the second lawsuit against the two automobile defendants must fail, since the whole claim had been adjusted in the settlement.

Respondent cites two decisions on the point that under the express provisions of Sec. 3658, supra, a claimant may settle a tort claim with less than the whole number of joint tort-feasors, and proceed against the others. They are: Berry v. K. C. Pub. Serv. Co., 343 Mo. 474, 488(4), 121 SW. (2d) 825, 833(11-16); and Farrell v. Kingshighway Bridge Co. (Mo. App.) 117 SW. (2d) 693, 697(6).

This is obviously true. The crucial question here is whether that was done in this case. Appellant asserts the plaintiff's whole claim of all parties for the casualty was settled. But as already stated the "Partial Release" expressly recited that it released only plaintiff's claim of Bedford's personal liability to him, and specifically reserved the right to proceed against the appellant Public Service Company. As against that respondent urges that the insurer's draft for $2100, issued in satisfaction of the settlement, recited it was in "Full Settlement." But that obviously referred to the settlement of Bedford's personal liability made with the plaintiff's mother and guardian to whom the draft was made payable. The Release and draft must be read together to get the full meaning of the agreement. And when they are so read it is clear that plaintiff's claim [326] against the appellant Public Service Company asserted in the same suit was left unadjusted.

Appellant cites two decisions holding that a paid and cancelled check may be an instrument of full release as much as a more formal document. And that is true where the check so shows. Thus in Booth v. Dougan (Mo. App.) 217 SW. (2d) 326, 328(4), a physician sued a patient on an account for professional services, and the patient produced his paid, indorsed and cancelled check to the plaintiff reading "Pay to the order of Davis S. Booth, M. D., $200. In full of account to date." It was held the check precluded recovery of any additional amount on the account.

And in Dean v. Bigelow (Mo. Div. 2) 292 SW. 25, a husband paid a nurse for the care of his wife until her death by 48 checks for $30 each, each check bearing the notation "in full of amount due to date." The decision held this was a complete defense in the nurse's suit in quantum meruit after the wife's death for the same services, in the absence of any explanatory evidence to the contrary. But in the instant case there was such evidence—the Partial Release

showing that the $2100 payment was in settlement of the liability of the motorist Bedford only. We rule this contention against appellant.

Appellant's next point is that the plaintiff-respondent boy failed to make a case for the jury. This necessitates a review of the evidence on that question. The plaintiff 9 year old boy had been sent to a grocery store to get some milk. The store was at the southeast corner of Park and Lexington Avenues, the former running north and south and the latter east and west. He started north across Lexington Avenue. It was just dusk. He looked both ways—east and west—and saw some automobiles coming from the west. He also said the automobiles were coming from his right side, which would be from the east. He got as far. as the middle of Lexington Avenue, and looked back (west) to see if a bus was "still there" and it "was right on" him.

There had been several "cars" coming from the right (which would be east) when he first started across Lexington Avenue, and he waited to let them go by. The bus did not sound its horn and it was "real close", coming toward him [demonstrating the distance on the courtroom floor]. He jumped north out of the way. He was shown a photograph, Exhibit 1, and put an X mark on it indicating he was standing about at the midline of Lexington Avenue on the projected east line of Park Avenue. He did not see the automobile that struck him.

He repeated this statement on cross-examination, but it was shown that in a deposition he had said he saw it "just before I got across the street." He declared he didn't see another westbound bus following the automobile. And he repeated that at the curb outside the grocery store he stopped and looked both ways, and then walked slowly out into the middle of the street (Lexington Avenue). He stopped there before he looked around and saw the bus (coming from the west) right close to him—about 2 or 3 feet away. It was shown that in a previous deposition he had estimated Lexington Avenue was 10 or 15 feet wide, but he couldn't remember saying that. And he said he jumped about a foot when he saw the bus. On re-direct examination he said he was in the middle of the street and unaware that the bus was approaching, because he was watching westbound traffic, until he suddenly looked to the left and got a glimpse of it and jumped out of the way, when it was 2 or 3 feet distant. He didn't know whether it had slackened speed or sounded its horn.

As against the testimony of the plaintiff boy, four women who were passengers on a westbound bus, which was following Bedford's automobile, testified that the plaintiff boy was not in *front* of the eastbound bus, and did not jump from that position into the path of the Bedford automobile. On the contrary, they said he jumped from *behind* the eastbound bus against the left front fender of the

automobile, or to a position where he was struck by it and fell in the street. The testimony of Miss Devine, a pedestrian, was substantially the same. And so was that of a Mrs. Walsh, a passenger in Bedford's automobile, [327] and of Carl Schauperl, the driver of the westbound bus. They estimated the speed of these two vehicles was about 20 miles per hour.

The driver of the eastbound bus was not produced as a witness. And by way of explanation appellant offered to prove by one of its investigators (at the time) that he had interviewed the drivers of all eastbound busses who had passed the scene of the casualty over a period of 26 minutes "enclosing" the time thereof, 5:25 p. m., and that all of them told him they knew nothing of "such an incident." The trial court excluded this offered testimony on the objection of respondent's counsel that it was immaterial, privileged, negative and hearsay. Appellant contends it was competent and fully explained its failure to call the eastbound bus driver as a witness—citing Fleishman v. Polar Wave Ice & Fuel Co., 163 Mo. App. 416, 423-4(4, 5), 143 SW. 881, and Brown v. United Rys. Co. (Mo. App.) 222 SW. 890, 891.

In the Fleishman case the plaintiff, a pedestrian, sued for damages for personal injuries resulting from the collision of two wagons, one being driven by a negro and having the words "Polar Wave" painted on its side. There was no direct testimony that the defendant Polar Wave Company either owned or controlled that wagon, though it did have some negro drivers. And the defendant's manager was permitted to testify that he had investigated whether any, and if so which one, of its drivers was in charge of the "Polar Wave" wagon involved. But the trial court refused to permit the manager to testify further that he had been unable to find any driver having knowledge of the collision. For error in rejecting that proffered testimony the Court of Appeals reversed and remanded the cause, holding it was competent: (1) to show the manager had no notice of the casualty; and (2) to repel the unfavorable presumption which otherwise might arise from the manager's failure to produce as a witness the driver of the wagon allegedly involved.

The Fleishman case was followed in the Brown case, supra, where the plaintiff had brought his suit for personal injuries against a streetcar company in St. Louis almost five years after the casualty occurred, and no report thereof had ever been made to the management before the institution of the suit. These two decisions evidently were based on the rule of necessity—in other words on the theory that the party had produced the best evidence available to him on the point.

But is that true here? We think not. It was incumbent on the appellant to produce as a witness (if it could its employee-driver[2] of the eastbound bus which, under the testimony of the plaintiff boy, had borne down on him and forced him to leap or run into the path of Bedford's automobile. Appellant made no effort to show that driver was no longer in its employ, or could not be identified or located, or was otherwise unavailable. On the contrary, it apparently knew the time schedule of its busses and the drivers thereof, because its offer of proof was that the investigator had interviewed the drivers of *all* eastbound busses passing the scene of the casualty within a 26 minute period embracing the time of the casualty, 5:25 p. m. And furthermore appellant knew of and used witness Schauperl, driver of the westbound bus, who said he saw plaintiff emerge from *behind* the eastbound bus into the path of Bedford's automobile. And Schauperl further said he stopped and passed out witness cards.

It is true here that the testimony of the defendant-appellant's witnesses was stronger numerically than that for the plaintiff. It had six witnesses who said the plaintiff boy came out from behind the eastbound bus instead of in front of it. The latter version was the plaintiff boy's alone. But even so, as said in the Transamerican [328] case, supra, the court is not bound to believe the testimony of witnesses (defendant's there, also) even though it be uncontradicted. And in this case we have also the fact that the motorman of the bus which, according to the boy, forced him in front of Bedford's automobile, was not called as a witness.

Appellant's main brief makes a final point that the respondent boy cannot recover on its primary negligence because he was guilty of contributory negligence. That may be tentatively conceded. But even so, we are unwilling to hold he cannot recover under the humanitarian doctrine if the jury believes the testimony in his behalf. The trial court granted a new trial on a different theory—error in Instruction No. 7. We agree with the court that the instruction was erroneous because there was no substantial evidence that the written release and draft, which speak for themselves, were in full settlement of all claims, including that against the appellant Public Service Company.

The judgment below granting a new trial is accordingly affirmed, and the cause remanded for that purpose. All concur.

---

[2]Baumgartner v. Kansas City (Mo. Div. 2) 204 SW. (2d) 689, 692(5); Alexander v. St. L.-S. F. Ry. Co., 327 Mo. 1012, 1025(8), 38 SW. (2d) 1023; Beatty v. Chandeysson, 238 Mo. App. 868, 878 (50), 190 SW. (2d) 648, 654(4); Transamerican Freight Lines v. Monark Egg Corp.. 236 Mo. App. 1047, 1052(3, 4), 161 SW. (2d) 687, 690 (3, 4).