Rose SNYDER, Appellant-Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant-Respondent.

No. 47215.

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1959.

Murphy & Gaertner, Carl R. Gaertner, St. Louis, for appellant-respondent Rose Snyder.

Frank B. Green, Lloyd E. Boas, St. Louis, of counsel, for appellant-respondent, St. Louis Public Service Co.

BARRETT, Commissioner.

The plaintiff, Rose Snyder, was a passenger on a bus when the bus operator and the bus became concerned with and involved in a collision between two other vehicles, an automobile and a coal truck. To recover damages for her resulting personal injuries Mrs. Snyder instituted this action against Junus Wright, the driver of the automobile, Edward Bridges, the driver of the coal truck, and the St. Louis Public Service Company, a public carrier. Bridges and Wright defaulted and a verdict was directed against them; by a nine to three vote the jury returned a verdict in favor of Mrs. Snyder in the sum of $12,500 against the three defendants. On June 5, 1958, seven days after the entry of the judgment, the bus company filed its alternative motion for judgment or a new trial. On August 15, 1958, seventy-one days after the filing of the motion, the trial court entered an order holding in abeyance the judgment against Wright and Bridges and overruling the company's motion for judgment but sustaining the motion for a new trial on the issue of liability only on two of the grounds specified in the motion, that the court had erred in giving instruction one and in failing to sustain an objection to certain argument by plaintiff's counsel.

■ Mrs. Snyder contends, in the first place, that the order granting a new trial on the issue of liability only was a nullity and that, therefore, the company could not appeal. Since the order granting the partial new trial was entered after the elapse of more than thirty days (V.A.M.S., Sec. 510.370) and was not relief sought by the company, it is said that the order in fact

overruled the motion and constituted the granting of a new trial on the court's own motion. The short answer to the basic defect in the plaintiff's argument is the fact that, even though thirty days had elapsed, the court ruled on the motion within ninety days (V.A.M.S., Sec. 510.360) and granted a partial new trial (V.A.M.S., Sec. 510.330), not on the court's own initiative, but upon two grounds or specifications set forth in the motion (Loveless v. Locke Distributing Co., Mo., 313 S.W.2d 24, 27; Borders v. Niemoeller, Mo.App., 239 S.W. 2d 555, 558; Birmingham v. Kansas City Public Service Co., 361 Mo. 458, 235 S.W. 2d 322); therefore, either or both parties were aggrieved and had the right to appeal. Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 34 A.L.R.2d 972.

Mrs. Snyder contends, in the second place, that the first specification upon which the partial new trial was granted is not supported by the record (Pitha v. St. Louis Public Service Co., Mo., 273 S.W.2d 176) and so there was an abuse of discretion (Heggeman v. St. Louis Public Service Co., Mo.App., 255 S.W.2d 99, 104), and, in any event, that instruction one was not erroneous—with the consequence, according to her, that the order should be reversed and the judgment reinstated. Osborne v. Goodman, Mo., 289 S.W.2d 68. The company makes no attempt to defend the first specification of error and it is assumed to be without merit. Furthermore, the company does not contend that there is no evidence to support a finding of breach of duty and negligence in any respect or upon any theory. The company does contend, however, that the plaintiff failed to make a submissible case upon the theory specifically hypothesized in her recovery instruction, that therefore instruction one is not supported by the evidence and is erroneous and, finally, that the court erred in failing to grant a new trial on the issue of damages as well as liability. Thus the essence of this appeal is whether the plaintiff has a submissible case upon the theory specifically hypothesized in instruction one.

At 3:30 in the afternoon, July 18, 1956, the bus was traveling north on Newstead at a speed of 20 miles an hour; it was following, 150 feet back, an automobile driven by Junus Wright. Wright signaled his intention of making a left turn onto Greer but after signaling drove directly into the path of a southbound coal truck driven by Edward Bridges. The truck, traveling south on Newstead at an undiminished speed of 30 to 35 miles an hour, hit the automobile, "spun it around" and against the curb on the southwest corner of the intersection, and caromed or skidded diagonally across the white center line and scraped or hit the bus which by that time had slackened its speed to ten miles an hour but had traveled up to the intersection. The truck hit or scraped the left side of the bus, about 24 inches from the rear end, and came to a stop 6 or 8 feet beyond. Under these circumstances the plaintiff poses the question: "Is the duty to act imposed upon the operator of a common carrier of passengers for hire when he first realizes, or in the exercise of the highest degree of care should realize, that a collision between two vehicles, one of which is moving at a high rate of speed on wet pavement, is about to take place just a few feet to the left of the intended path of his vehicle, or can he wait until the involvment of his vehicle and his passengers is a certainty before taking evasive action?" At another point in her brief the plaintiff says, "the operator, by his own testimony, knew there was going to be a collision ahead of him and just a few feet to the left of his intended path when the truck was one-half block (or 150 feet) north of the intersection and his bus at that time was admittedly more than 100 feet south of the intersection." The difficulty with these postures is that the plaintiff did not seize upon the situation as the bus approached the intersection from 150 feet and the operator first saw the two vehicles or even upon the moment he was first aware of the hazard of their colliding. The instruction may include this general hypothe-

sis but with precision and great particularity the plaintiff seizes upon the circumstances after the truck was skidding towards the bus and after the operator knew there was danger of a collision between the truck and the bus and she specifically limits the jury to the hypothesis "in time thereafter" to have avoided the collision. This is the language and specific hypothesis of the instruction: "that the operator of said bus knew, or in the exercise of the highest degree of care could have known, of the danger of collision between said truck and said bus, if so, in time thereafter to have avoided said collision between said bus and truck by turning said bus sufficiently to the right and by increasing the speed of said bus thus and thereby moving said bus from the path of the skidding truck, if you so find, but that he failed to do so, and if you find that in so failing, * * * said operator failed to exercise the highest degree of care and was negligent * * *." Thus again, the question is not whether there was a submissible case upon any theory, the problem is whether there was any evidence from which the jury could reasonably find negligence on the part of the bus driver in the restricted respects specifically set forth in the instruction.

Mrs. Snyder was paying no attention to the speed of the bus or to the manner in which it was being operated, "didn't really pay any attention to anything." The first untoward event she was aware of was the noise of the bus and truck colliding, she heard "a crash" and knew that the bus was hit by something. She did not see the truck as it skidded towards the bus and she was not aware of the speed of the bus and did not know whether there was any slackening of its speed before the collision. As her counsel urges, she did say that the bus did not swerve "just before the accident." She heard no warning signals and she did not notice any abrupt or sudden movement of the bus in "swerving to its right or in slackening its speed."

Another bus driver, a defendant's witness who happened to be a passenger on the bus, did not see the automobile and truck collide but he heard the collision and looked up and it was his opinion that the truck was not "skidding," rather he "would say," the truck "was trying to avoid hitting the automobile (bus) and swerve— and cut to the left." He observed the course of the truck and "the way it was going to come in contact with it (the bus), I thought it was going to miss it completely—that was my impression." He said that he did not feel or detect any sudden stopping or slackening or reduction of speed on the part of the bus. He was asked this question: "If that bus had been moved just a couple of more feet either forward or to the east, it would have missed completely, wouldn't it?" He answered, "Yes, it would if the driver had time."

The only witness who saw the automobile and the truck before and as they collided in the intersection was the bus operator, Mr. Ottinger. He said that as he proceeded northbound on Newstead at a speed of 20 miles an hour he was watching the automobile which was then about 150 feet ahead of the bus. At the same time he also saw the truck southbound on Newstead traveling at an undiminished speed of 30 to 35 miles an hour, and it was "about a half block north of Greer Avenue." He summarized the situation at that moment in this account: "Well, I was watching this automobile, he was going to make a left turn; he signaled and he stopped momentarily and started across and I saw this truck proceeding south on Newstead." A couple of seconds elapsed between the time he first observed the automobile until it started to make the left turn at a speed of two or three miles an hour and his bus was then "about 60 feet closer to the intersection." As he watched the automobile turn in the intersection he "saw the truck coming down" and, "I said to myself, he is not going to make it, he is going

to hit that car and just as I said that, he did hit the car." The truck caromed, "looked as if he lost control partially," and came towards the center of the street and across the white line. At that time the bus was "about 90 feet" from the point "where those two vehicles collided." Upon seeing the "impact" of the automobile and truck the bus operator continued on but "slowed down to about 10 miles an hour because I didn't know which way he was coming and started to swerve slightly and he still didn't have control of the truck and it brushed up against the grill and the radiator on the rear end of the bus."

■■ The bus is 35 to 38 feet long and 8 feet wide and prior to the collision was being driven about a foot east of the center line of the street. As the truck caromed towards the bus the operator changed its course slightly to the east and, as the plaintiff contends, if the bus had been moved 24 inches farther to the right or ahead there would have been no collision. Also, if instead of slackening the speed of the bus to ten miles an hour the operator had accelerated its speed or continued at the speed of 20 miles an hour there would have been no collision. But these two possible inferences particularly relied on by the plaintiff are permissible more from hindsight than prevision. And, as in the instruction, the plaintiff seizes upon the circumstances evidentially as and after the truck skidded towards the bus. This is not to say that there is a lack of proof in support of the instruction merely because these two hypotheses may depend upon split-second timing; if the space and time are available there can be no objection to the fact that negligence and liability hinge on fractional seconds. Compare: De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628; Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540, and Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495. Nor is there any objection to the fact that the precise course of the caroming truck could not be anticipated; the test of the operator's conduct in general is what with

foresight in the circumstances he should have foreseen and done (Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296; 2 Harper & James, Torts, Sec. 16.9, p. 928), and, the standard being applicable, he may be liable for unforeseeable consequences. 2 Harper & James, Torts, Sec. 20.5, pp. 1134, 1143–1144.

■ The difficulty with the plaintiff's seizing upon the circumstances as she has in instruction one and evidentially is that, even though Mr. Ottinger said that the bus was "about 90 feet" back when the truck and automobile collided, instead of increasing the speed of the bus or swerving it to the right he slackened its speed from 20 to 10 miles an hour because "I didn't know which way he was coming and started to swerve slightly." As indicated, there was the time and space but instead of utilizing them as hypothesized Mr. Ottinger slackened the speed of the bus and turned slightly to the right; in short, there were alternative courses of action in the circumstances (1 Blashfield, Cyclopedia of Automobile Law, Sec. 670, p. 553), while the plaintiff's specifically restricted hypothesis compelled him at his peril to choose what hindsight indicates would have been the safer course. LaPierre v. Kinney, 225 Mo.App. 199, 19 S.W.2d 306. The distinction is hairsplitting, nevertheless, as specifically restricted hypothetically the alternative circumstances necessarily relied upon are so tenuous and unsubstantial and lacking in probative force as to leave the inference and finding of breach of duty and negligence to speculation. Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316.

■ The issue of damages and liability are separable, the defendant's doctor admitted that Mrs. Snyder had "sustained a low back soft tissue injury with some nerve root irritation" and he conceded as one of the possibilities that she may have a ruptured intervertebral disc as her doctors positively testified, there was no error in the assessment of damages and no mis-

conduct on the part of the jury. In these circumstances there is no demonstrable abuse of discretion in the court's denying the defendant a new trial on the issue of damages. Rosser v. Standard Milling Co., Mo., 312 S.W.2d 106; Stith v. St. Louis Public Service Co., supra; annotation 34 A.L.R.2d 988; 66 C.J.S. New Trial § 11, p. 87; 39 Am.Jur., Sec. 22, p. 46.

Accordingly, the judgment is affirmed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.