EDITH G. TABLER v. CHARLES G. PERRY, Appellant.—85 S. W. (2d), 471.

Division One, July 9, 1935.*

*NOTE: Opinion filed at September Term, 1934, April 17, 1935; motion for rehearing filed; motion overruled at May Term, July 9, 1935.

156

*Wilton D. Chapman* for appellant.

157

*Strubinger & Strubinger* and *Freeland L. Jackson* for respondent.

STURGIS, C.—In this case the plaintiff seeks damages for the death of her husband, Harry C. Tabler, who was killed in an automobile accident on Highway 66 some fifty miles west of St. Louis. At the time of his death the deceased was riding as a guest of the defendant in defendant's automobile driven by him. The deceased and defendant were friends and business associates and arranged to go for a week-end outing at a fishing resort, defendant furnishing the automobile and driving it. Deceased and defendant left St. Louis on this trip at four or five o'clock in the evening and the accident occurred when the parties had driven about two hours in the country and it was then getting dark. The highway on which the parties were traveling in a general west direction was a well-improved concrete highway, the concrete slab or roadway being eighteen to twenty feet wide. What happened was that the automobile left the concrete roadway on the north or right-hand side, going at about forty miles an hour, and ran diagonally into the ditch and against the embankment and turned over with the occupants underneath the car, crushing and killing plaintiff's husband, Harry C. Tabler, and injuring the defendant. No one saw the accident or could give the details except the defendant himself. Other travelers on the highway soon arrived, found the overturned car at the side of the road with the headlights still burning, took care of the occupants and observed the physical conditions. ▆ The petition in the case alleges that plaintiff's husband died October 30, 1931, while riding in an automobile owned and being operated by defendant along this public highway with a concrete slab for travel thereon and that defendant "negligently caused and permitted said auto to leave said slab then and there free from travel and unobstructed and collide with a bank about four feet high and about ten feet to the north of said slab and to turn over, whereby her said husband was thereby directly caused to be pinned beneath said automobile" and to sustain injuries causing instant death. This is a charge of general rather than specific negligence. Judgment

was prayed for $10,000 damages. The answer was a general denial coupled with an averment of contributory negligence and that the parties were engaged in a joint venture, matters of no importance on this appeal. The jury returned a verdict for defendant. The court granted plaintiff a new trial and defendant has appealed.

The evidence on behalf of plaintiff consisted of proof of the physical facts attending the accident and of the statements made by the defendant to plaintiff and third parties as to how the accident occurred and the reading of defendant's deposition taken shortly before the trial as an admission against interest. Defendant's evidence is solely that of himself given at the trial, he being the only living witness who knew or could know many of the circumstances of the accident. There are few disputed facts as no one could contradict the defendant as to the details of the accident. We will say, however, that the defendant testified with commendable frankness and seeming fairness both in giving his deposition and at the trial before the jury. That he testified more fully and mentioned and explained some matters at the trial not referred to in his deposition can well be explained on the theory that he and his attorneys knew that he would testify fully at the trial and therefore in the deposition he merely answered as to matters inquired about.

The defendant testified and conceded that he invited the deceased to go with him on this pleasure trip and that he furnished the automobile and equipment in which they were riding and that he did the driving without any interference, warning or suggestion of the deceased. Defendant admitted and the physical facts showed that the automobile went off the concrete driveway on the right or north side onto the part called the shoulder, which was not intended for driving and, while not very rough or dangerous, was composed of clay with gravel and some small stones thereon; that the automobile went diagonally into the drainage ditch and struck the right front wheel against but did not go upon the embankment which was some four feet high. The car then turned over, coming to rest on its top, and the first person who arrived at the wreck, an automobile traveler going towards St. Louis, said the wrecked car was lying nearly on its top with the wheels up in the air, the lights burning and the front end of the car about flush and parallel with the concrete slab. In other words, the wrecked car was nearly at a right angle with the concrete pavement and with the lights shining across the same. Other travelers came up also and the wrecked car was lifted up on its wheels and the deceased found crushed to death. All the evidence showed that it had not been raining and the road was dry and in good condition. There was no travel on the road at the time and place of the accident and no obstructions. Defendant said his car was in good running condition. The road was comparatively level and straight

before reaching the place of the accident, but such place was at the top of a moderate upgrade where the road made a slight curve to the left. In other words, the car left the concrete pavement, the right front wheel leaving first, at a point in the road at the top of a slight upgrade where the road made a moderate curve to the left. No accurate measurements were made and we describe the road and its conditions substantially as did the witnesses.

Plaintiff relies largely on the doctrine of *res ipsa loquitur* to support her case, while the defendant says that that doctrine does not apply to the facts here and that the accident was due to his car "skidding" from some unknown cause or likely to soft concrete along the middle dividing line of the concrete driveway without any negligence on his part. As to this, defendant testified that he was an experienced driver, his car and the road were in good condition, and that he was driving about forty miles per hour; that he went down a gradual dip, "gave it the gas to maintain the speed of forty miles per hour to carry us over the rise and it was dark;" that as his car got to the top of the rise the rear end suddenly began "coming round to the left;" that the rear end swung around till he couldn't keep the front wheel on the pavement and that they went off on the rough shoulder and against the bank; that he tried to straighten it out but the front wheel struck and swerved off the bank and the car started out onto the road; that he thought he was going to get back onto the road when suddenly "the left side of the car lifted up" and something struck him, knocking him unconscious, and when he came to he was under the car and heard the deceased calling for help; he crawled from under the car but could not lift the car or extricate his companion till help came and he was then dying or dead. When asked if he knew, when the car went into the skid, what caused it to do so, he said he did not. He did not claim to have slowed up any on coming to the curve at the top of the rise and says that he did not put on his brake at any time, though he ran three or four car lengths after starting off the pavement before the car struck the bank. He also said that his companion, the deceased, who was riding with him in the front seat, said, "Oh, Charley," as the car started off the pavement and that deceased stretched his legs and feet against the foot board to brace himself and when the car struck the bank the "rebound of his muscles" threw the deceased over into the back seat where he was found after the car turned over.

A witness for plaintiff, Joseph Pruss, who was the first person to arrive at the scene of the accident and described the position and condition of the wrecked car with deceased under it, testified that very shortly after the accident he asked the defendant how it occurred and defendant replied that "he could not explain it."

Plaintiff testified that in two or three days after the accident she and plaintiff's father went to defendant's home and asked him about the accident and that in reply to her inquiry he said that they were driving along about thirty-five miles per hour and that the front wheel ran off the pavement and deceased said, "Watch out," and that he (defendant) kept on driving and hit the bank, tried to get back on the pavement and the car tipped over; that the pavement was dry; that he wished he had applied the brakes but hadn't thought of that; that when the car left the pavement deceased stretched his feet against the floor board to brace himself and when the car hit the bank he flew into the back seat; and told of his being pinned under the car, etc. Deceased's father, Harry C. Tabler, Sr., testified that he talked to the defendant at the undertaker's parlors just after the accident and that defendant then said: "'I was driving thirty-five to forty miles an hour and I run right off the road, I don't know why. It was perfectly dry, there was no rain whatever. I feel responsible." After the defendant had testified at the trial that when his car left the pavement the hind wheels skidded to the left to such an extent that although he tried to keep the front wheels on the pavement by turning the steering gears he could not do so, the deceased's father was recalled and testified that when defendant first talked to him at the undertaking parlors he said nothing about the rear wheels skidding or there being soft concrete along the center line of the concrete pavement but merely said that he did not know what caused his car to act as it did. To the same effect is the evidence of Charles Link, who heard this conversation. The defendant explained this by testifying that he did not know till several days later than these conversations that there was soft concrete along the center line at the time of the accident; that this was first ascertained several days after the accident by an investigator for the surety company carrying liability on this car, who informed him of this fact, and that he then went out to where the car was wrecked and verified it. Defendant testified that while he did not yet know that this soft concrete had anything to do with his car going off the concrete slab, he was greatly relieved in his own mind on ascertaining that this might have been the cause of its skidding.

At the close of the evidence the court overruled defendant's demurrer thereto. It also refused to instruct for the plaintiff that "under the undisputed evidence" the jury must find defendant guilty of negligence and return a verdict for plaintiff. The court submitted the case for plaintiff under her principal instruction to the effect that if defendant was driving the car in question along the highway and the deceased was riding with him at his invitation, and that defendant was in complete charge and control of said car, and if the highway was constructed of a concrete slab about eighteen feet in width

and was then and there unobstructed and free from travel, and that defendant caused and permitted the automobile to leave the slab and collide with a bank some four feet high and ten feet north of the slab and to turn over, causing deceased to be crushed under said car and sustain fatal injuries; and that in causing and permitting his automobile to leave said slab and collide with the bank the defendant was negligent, if you so find, and that such negligence directly caused the death of plaintiff's husband, who was at the time exercising ordinary care for his own safety, etc., to find for plaintiff. The court gave all the instructions asked for by defendant except the peremptory instruction mentioned. When the jury returned a verdict for the defendant the court sustained plaintiff's motion for new trial on the grounds therein specified, to-wit: "(3) The verdict is against the law and the evidence; (9) The court erred in refusing to give and read to the jury instructions offered by the plaintiff at the close of the case, said instructions reading as follows: 'At the close of all of the evidence you are instructed that under the undisputed evidence in this case you must find the defendant guilty of negligence.' 'At the close of the whole case the court instructs the jury that under the law and the evidence your verdict must be in favor of the plaintiff and against the defendant.' "

■ The only question here is whether the trial court erred in sustaining the motion for new trial. We cannot agree that the trial court properly granted plaintiff a new trial on the ground that at the close of all the evidence the court should have peremptorily instructed the jury that under the undisputed evidence they must find the defendant guilty of negligence and return a verdict for plaintiff, leaving the jury the only duty of fixing the amount of damages. It would be a most unusual suit for damages for personal injuries where the evidence would be such that the court could peremptorily instruct the jury to find a verdict for plaintiff. The burden of proof in negligence cases is on the plaintiff to prove both plaintiff's injury and defendant's negligence and the causal connection between the two. At the argument here and in the briefs the plaintiff does not seriously insist that the court erred in refusing this peremptory instruction for her.

■ Plaintiff does insist, however, that the trial court properly granted her a new trial on the other specified ground, that "the verdict is against the law and the evidence." As to this plaintiff argues that this is equivalent to granting a new trial on the ground that the verdict is against the weight of the evidence, which is largely within the court's discretion, and that the phrases "against the law and the evidence" and "against the weight of the evidence" mean the same thing. The law seems to be that when the court refuses to grant a new trial, the assignment of error either in the motion for

new trial or in this court that the verdict is against the law and the evidence is not sufficient to present for review here the point that such verdict and judgment is against the weight of the evidence. [Bond v. Williams, 279 Mo. 215, 217, 214 S. W. 202; Whitehead v. Liberty National Bank (Mo. App.), 56 S. W. (2d) 833; De Maria & Janssen v. Baum (Mo. App.), 52 S. W. (2d) 418.] Where, however, the court, as here, did grant the new trial on an assigned ground rather ambiguous in its language and scope, this court will be more liberal in upholding the court's action. [Carnie v. Toll (Mo.), 281 S. W. 41; Beer v. Martel, 332 Mo. 53, 55 S. W. (2d) 482, 484; Darnall v. Lyons (Mo. App.), 51 S. W. (2d) 159, 163.] We have uniformly ruled, however, that as our statute requires the trial court to specify the grounds on which a new trial is granted, when it does so specify the particular grounds the presumption is that all the grounds not so specified are overruled. [Yuronis v. Wells, 322 Mo. 1039, 1048, 17 S. W. (2d) 518; Kersten v. Hines, 283 Mo. 623, 634, 223 S. W. 586.] We find that the second ground in the motion for new trial is that "the verdict is against the weight of the evidence" and this ground was therefore overruled by the trial court. █ We think it is apparent, therefore, that the trial court on considering the motion for new trial came to the conclusion that as this was a res ipsa loquitur case and under the facts proven by plaintiff making a prima facie case for her the burden of proof shifted to defendant to exonerate himself and show that he was not negligent, and, having failed to carry such burden, the verdict should be for the plaintiff. Such was the rule of law in this State as declared in Price v. Railway Co., 220 Mo. 435, 119 S. W. 932, and prior cases. That case and like cases were, however, overruled by this court in McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557, 563, and the rule established that even in a res ipsa loquitur case the burden of proof as to defendant's negligence remains on plaintiff throughout the case and the burden of showing non-negligence does not shift to the defendant at any stage of the case. The trial court was in error, therefore, in holding that as plaintiff made a case for the jury on the res ipsa loquitur theory and as defendant, on whom the burden of proof rested to show that he was not negligent, had failed to produce any substantial evidence to that effect, the court should as a matter of law have instructed the jury to find for plaintiff as to defendant's negligence and not having done so the verdict was against the law and the evidence. Under the ruling in the McCloskey case the burden of proving defendant's negligence remained on plaintiff throughout the case and the jury was justified on proper instructions in returning, as it did, a verdict for defendant.

█ Plaintiff correctly argues that although the court may not have been justified in granting her a new trial on the grounds specified

in the court's order, yet if there be other grounds in the record justifying its action in so doing the order will be affirmed. [Yuronis v. Wells, 322 Mo. 1039, 17 S. W. (2d) 518; Smith v. K. C. Public Service Co., 328 Mo. 979, 994, 43 S. W. (2d) 548; Foley v. Union House Furnishing Co. (Mo. App.), 60 S. W. (2d) 725.] Plaintiff therefore points out certain erroneous instructions given for the defendant—a matter we will discuss later. Defendant meets this argument with the insistence that the doctrine of *res ipsa loquitur* does not apply to the facts of this case and that as plaintiff failed to prove any specific negligence of defendant, the court should have sustained defendant's demurrer to the evidence. Of course, if under the facts most favorable to plaintiff she cannot be allowed to recover, she should not be granted a new trial. Defendant's argument on this point is that the evidence conclusively shows that defendant's automobile "skidded" on and then off the concrete pavement and that fact being shown without more negatives the inference of negligence and makes the doctrine of *res ipsa loquitur* inapplicable, especially so when invoked in favor of one who is riding in an automobile as an invited guest of the party charged with the negligence.

■ That the doctrine of *res ipsa loquitur* applies to the owner and driver of an automobile on a public highway in a variety of cases is unquestioned. In 15-16 Huddy Encyclopedia of Automobile Law (9 Ed.), page 280, section 157, it is said: "But under the doctrine of *res ipsa loquitur*, the fact of the occurrence of an injury and the circumstances surrounding it may permit an inference or presumption of negligence of defendant, make out a prima facie case for plaintiff, and call for an explanation of the accident by defendant, where the accident is such as does not happen in the ordinary course of events where reasonable care is used. The doctrine of *res ipsa loquitur* applies where an automobile runs wild, overturns, or runs off the roadway and strikes a person on the sidewalk, or collides with a tree, with a pole, or with a building. It also applies where an automobile collides with a vehicle standing or parked at the curb. . . ." In 1 Berry on Automobiles (6 Ed.), page 598, section 723, this is said: "The presumption of negligence arises when an injury is suffered by a guest riding in an automobile which, if propelled and controlled in the usual and ordinary manner, an accident would not have occurred, and no injury would have been inflicted.

"A presumption of negligence arose from the overturning of an automobile in exclusive control of defendant which caused injury to plaintiff, and occupant.

"Where one who was riding as a guest with the owner of an automobile was injured by the skidding of the machine it was held that the rule of *res ipsa loquitur* applied, and that whether the defendant's explanation that the car was caused to skid by the highway being

made slick by a sudden shower of rain, was a sufficient defense, was a question for the jury. . . .

"The doctrine of *res ipsa loquitur* was held to apply where a guest in defendant's automobile was thrown therefrom and injured by reason of the car leaving the road and running into a tree as defendant was driving it on the highway at about forty miles an hour." The law of this State, Section 7775, Revised Statutes 1929, requires: "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care, and at a rate of speed so as not to endanger the property of another or the life or limb of any person." This court has held that the duty to exercise the highest degree of care in operating an automobile applies in favor of one riding therein as an invited guest as well as to a passenger for hire. [Kaley v. Huntley, 333 Mo. 771, 63 S. W. (2d) 21, 25; Gude v. Weick Bros. Undertaking Co., 322 Mo. 778, 783, 16 S. W. (2d) 59.]

In the recent case of Harke v. Haase, 335 Mo. 1104, 75 S. W. (2d) 1001, we held the doctrine of *res ipsa loquitur* to apply to the driver of an automobile which left the street along which it was being driven and ran against a person on the adjacent sidewalk, and quoted with approval the holding in Smith v. Hollander (Cal. App.), 257 Pac. 577, that "When an automobile leaves its accustomed place of travel in the street, runs upon the sidewalk, and there strikes a pedestrian, the doctrine of *res ipsa loquitur* has been generally held to apply. (Citations.) In such case all the elements necessary for the application of the doctrine are present. The injured person is not in a position to know the cause of the mishap. The one in control of the instrumentality causing the injury is or should be in a position to know. Such an occurrence does not usually happen in the absence of negligence on the part of the one in control of the automobile." The inference of negligence is from the fact that the automobile is driven in such manner and lack of control that it leaves the proper part of the highway safe for travel and encounters or creates dangers to persons whether such persons are occupying the automobile or are near or along the highway. Had the deceased in this case been a person standing or walking by the roadside and been struck by defendant's car when it left the concrete slab and ran into the ditch and embankment, his injury would have been no more due to or have raised an inference of defendant's negligence than in the manner it did happen. The inference of the driver's negligence from his driving the car under his control off the traveled highway, thereby encountering or creating dangers, is not dependent on whether the person injured as a direct result thereof is in the automobile or in its pathway. Our Court of Appeals in Mackler v. Barnert (Mo. App.), 49 S. W. (2d) 245, held in an action for the death of a guest riding in the automo-

bile that the doctrine of *res ipsa loquitur* applied when it was shown that the automobile crisscrossed the roadway and ran into the embankment at the side of the road. The court said that, ''Surely, this extraordinary performance is ample to give rise to a presumption of negligence on the part of defendants' in the operation of the automobile. Whether or not the defendants' version of the facts, with respect to the locking of the wheels or steering device, resulting in the accident, exculpates them, was for the jury. (Cases cited.)'' To the same effect is Alley v. Wall (Mo. App.), 272 S. W. 999; Masten v. Cousins, 216 Ill. App. 268; Mackenzie v. Oakley, 94 N. J. Law 66. We are here applying the doctrine of *res ipsa loquitur* to a wrongful death case where the widow is plaintiff. Under our decision in State ex rel. Thomas v. Daues, 314 Mo. 13, 283 S. W. 51, such cause of action, being purely statutory, is original in the widow, coming into existence by virtue of the statute on the death of her husband and is not derivative or a continuation of any cause of action accruing to the deceased husband as to which he was or could be a party or witness. As to whether the *res ipsa* doctrine would apply if the injured guest was suing for his own injury is not here for decision.

There are cases holding that the mere skidding of an automobile without more is not negligence or evidence of negligence. [Polokoff v. Sanell (Mo. App.), 52 S. W. (2d) 443, and Heidt v. People's Motorbus Co., 219 Mo. App. 683, 284 S. W. 840, are cited and relied on.] In the Polokoff case the court held: ''The essence and controlling portions of the evidence to sustain plaintiff's case not only show a casualty and plaintiff's injury, but show beyond controversy that the cause of the injury was the skidding of the automobile in which she was riding. It will be observed that the car was not *driven* by the defendant into the ditch, but that it skidded and the rear wheels of the car *slipped off* the road into the depression by the side of it. If the car had not skidded, it is manifest from the evidence that no part of it would have fallen into the ditch. Hence, plaintiff proved not only the casualty and her injury resulting therefrom, but established beyond peradventure that the skidding of the car was the efficient, immediate, and proximate cause of the casualty. There was no showing of any act of omission or commission on the part of the defendant that could justify the inference of any fault on his part that caused the car to skid. . . . There was no evidence that the car 'ran over to the side of said road' and injured plaintiff in the sense that defendant drove it there. The rear wheels slipped in the ditch. They did not run into it.'' In that case the plaintiff's evidence, as well as defendant's, showed that the accident was caused solely by reason of the automobile skidding or slipping into the ditch. So, also, in Heidt v. People's Motorbus Co., supra, a passenger and carrier case, where the *res ipsa loquitur* doctrine most generally ap-

plies, the court ruled that where plaintiff's evidence showed that the automobile skidded against the curb on a wet street while going only eight to ten miles per hour, the facts made a showing of no negligence and negatived the inference of negligence from the facts necessary in a *res ipsa loquitur* case. When that case was retried the plaintiff again testified to the facts which made a case for her under the *res ipsa loquitur* rule except that she testified that "she had no knowledge as to what caused the motorbus to jerk or jolt and that she did not know whether the motorbus skidded or not." On this state of the evidence the court in Heidt v. People's Motorbus Co. (Mo. App.), 9 S. W. (2d) 650, ruled that as against a demurrer to the evidence "it is clear that the testimony on behalf of the plaintiff, as disclosed by the record before us, made out a prima facie case of presumptive negligence arising under the *res ipsa loquitur* rule." The plaintiff was allowed to recover under that doctrine and the court distinguished the then case from the one presented on the former appeal by saying: "On the trial resulting in the former appeal, plaintiff testified that the motorbus skidded against the curb, and this court ruled that, since plaintiff's own testimony showed just what specific act caused the accident, to-wit, the mere skidding of the motorbus, plaintiff was not entitled to go to the jury on presumptive negligence arising under the rule of *res ipsa loquitur*." The court further held that plaintiff's testimony given at the former trial "is not conclusive upon her" but was open to explanation; and further said: "It would be most unfortunate, in view of the character and extent of modern motorbus transportation, if a common carrier of passengers by motorbus could, in case of injury to a passenger, whether by overturning or wrecking of the motorbus, or the collision thereof with some other object, deprive the passenger, making out a prima facie case under the *res ipsa loquitur* rule, of the benefit of that rule, by showing that the accident was occasioned by the skidding of the motorbus, and thus escape liability for the injury." Of course, if the jury should find that the death of plaintiff's husband was caused by defendant's automobile skidding off the concrete slab notwithstanding he was exercising the highest degree of care in operating it, the verdict should be for the defendant, but that was a question for the jury.

We can also say in this case, as was said in the last-mentioned case, that "we also think that the testimony offered by defendant tends to show some specific negligence to aid the prima facie case made by the testimony on the part of plaintiff." Immediately after the accident defendant stated that he was driving about forty miles an hour on a dry pavement free of any obstruction and that he didn't know why his car went off of the same. He then said nothing about skidding. Defendant admits he was and had been driving at the rate

of forty miles per hour and kept up this speed in approaching and rounding the curve (see Sec. 7775, R. S. 1929, as to the rate of speed presumptive of not being careful and prudent, and Sec. 7777, R. S. 1929, as to reducing speed in rounding curves), and the jury might have concluded that defendant was driving faster than he said he was and ran off the pavement at the curve because of lack of attention short of the highest degree of care. We find no valid objection to Instruction No. 1 given for plaintiff.

Concluding, as we do, that plaintiff is entitled to the benefit of the *res ipsa loquitur* rule and made a case for the jury thereon, it follows that she was entitled to have her case submitted to the jury under proper and correct declarations of law. The court gave for the defendant this instruction:

"The Court instructs the jury that the charge laid by the plaintiff against the defendant is one of negligence. Negligence is a positive wrong, and therefore, in this case is not presumed. In other words, a recovery may be had on a charge of negligence only when such charge is sustained by the preponderance, that is, the greater weight of the credible evidence, to the reasonable satisfaction of the jury that the charge is true as laid, and it does not devolve upon said defendant to disprove the charge, but rather the law casts the burden of proof with respect to it upon the plaintiff, and such charge of negligence must be sustained by the preponderance, that is, the greater weight of the credible evidence to the satisfaction of the jury, as above stated. If, therefore, you find the evidence touching the charge of negligence against said defendant to be evenly balanced, or the truth as to the charge of negligence against said defendant remains in doubt in your minds, after fairly considering the evidence, your verdict must be for the defendant."

An instruction substantially the same as this one has been condemned by both divisions of this court as in effect requiring the plaintiff to prove defendant's negligence beyond a reasonable doubt. [Payne v. Reed, 332 Mo. 343, 59 S. W. (2d) 43; Aly v. Terminal Railroad Assn., 336 Mo. 340, 78 S. W. (2d) 851, 854.] Under our ruling in McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557, the burden of proof remains with the plaintiff throughout in a *res ipsa loquitur* case and the defendant is entitled to an instruction to that effect, but not to one requiring the evidence for plaintiff to remove from the minds of the jurors all doubt as to defendant's negligence. This instruction is also erroneous in telling the jury that negligence is not to be presumed, that is, inferred from the facts proven; since the case is based on the *res ipsa loquitur* rule which permits an inference of negligence from the circumstances of the injury. In Harke v. Haase, supra, we said of an instruction telling the jury, "The jury have no right to presume negligence," this declaration "could not

help but mislead and confuse the jury, in a *res ipsa* case, because they did have the right to presume (infer) negligence from the facts shown in plaintiff's evidence.''

Our conclusion is that the court should have sustained the motion for new trial on the ground of giving this erroneous instruction and the order granting the new trial is affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.