**Ned Owen ROBINSON and Fern Robinson, Plaintiffs-Respondents,**

v.

**ST. JOHN'S MEDICAL CENTER, JOPLIN, Missouri, it being an Amended Pro Forma Decree Corporation, Defendant-Appellant,**

and

**Bart Wooldridge, Defendant.**

**Ned Owen ROBINSON and Fern Robinson, Plaintiffs-Appellants,**

v.

**ST. JOHN'S MEDICAL CENTER, JOPLIN, Missouri, it being an Amended Pro Forma Decree Corporation, Defendant,**

and

**Bart Wooldridge, Defendant-Respondent.**

**Nos. 9446 and 9449.**

Missouri Court of Appeals, Springfield District.

March 7, 1974.

Motion for Rehearing and for Transfer to Supreme Court Denied March 25, 1974.

Plaintiffs-Respondents Rehearing Denied March 25, 1974.

Defendant-Appellant Application to Transfer Denied May 13, 1974.

Richard M. Webster and L. Thomas El-
liston, Myers, Webster, Perry & Elliston,
Webb City, for plaintiffs-respondents, ap-
pellants.

L. R. Buehner, Buehner & Buehner, Jop-
lin, for defendant-appellant.

William H. Sanders, Larry L. McMullen,
David C. Trowbridge, Kansas City, Henry
Warten, Warten & Fisher, Joplin, for de-
fendant-respondent; Blackwell, Sanders,
Matheny, Weary & Lombardi, Kansas
City, of counsel.

PER CURIAM:

Defendant Wooldridge performed gall
bladder surgery on Ned Robinson at de-
fendant St. John's Medical Center in Jop-
lin. A subsequent operation revealed a
laparotomy (lap) sponge had been left in
Robinson during the gall bladder surgery
due to an inaccurate sponge count. Robin-
son et uxor sued the doctor and the hospi-
tal under the doctrine of respondeat superi-
or on the theory that Mary Ritzman, the

surgeon's instrument nurse, and Beverly Gray, an employee of the medical center, had been negligent in making the closing sponge count. A Jasper County jury exonerated the surgeon and returned verdicts which awarded Robinson $50,000 and his wife $5,000 in damages against the medical center. Plaintiffs and the hospital filed separate appeals which have been consolidated here for determination.

The evidence was to the effect that an operating room is divided into two fields —one sterile and the other non-sterile. A sterile field includes the operating room and its immediate environs. Only persons who "are scrubbed" or sterile are permitted within the sterile field and they must remain therein until the operation is completed. In addition to Dr. Wooldridge, the sterile personnel present at the gall bladder excision with whom we are concerned were: Mary Ritzman, employed by the doctor and acting as his instrument nurse; Rose Ella Sidenstricker and Vivian Morey Jones, both employees of the hospital who were serving as suture or scrub nurses and assisting in the surgery in various ways. Beverly Gray, employed by the hospital, served as the non-sterile or "circulating nurse;" she was not permitted inside the sterile field and had, inter alia, the duty of keeping the Operating Room Record which included a record of the sponge counts made at the beginning of the surgery and at the closing of the peritoneum or inner lining of the abdominal cavity by the surgeon.

Lap sponges at St. John's were delivered to the operating room in packets of six and placed in the sterile field. Two scrub (sterile) nurses, namely, Mary Ritzman (the doctor's employee) and Rose Sidenstricker (the hospital's employee), made the beginning count. This count was recorded on the Operating Room Record.

As lap sponges were used and discarded during surgery they were removed from the sterile field into the domain of circulating nurse Beverly Gray (the hospital's employee) in the non-sterile field.

As stated in plaintiffs' appeal brief, "No one participating [in the gall bladder surgery] had any independent recollection with regard to the occurrences in the operating room," and this was particularly true regarding the sponge count on closure. Consequently, the testimony was replete with recountings of what usually or generally transpired. Briefly, it seems that when the surgeon is ready to close he requests but does not participate in the sponge count and relies on what he is told regarding the correctness vel non of the count. A scrub nurse counts the sponges remaining in the sterile field and the circulating nurse counts the sponges in the non-sterile field, "with each witnessing the other's count as far as possible limited to their inability to leave their own field and invade the field of the other." The scrub nurse reports her count to the circulating nurse who records the sterile field count on the Operating Room Record; the circulating nurse counts the non-sterile field sponges, records this count on the same record, calculates the total of the two counts and announces whether the closing count is correct or incorrect. Actual recording of the two counts on the Operating Room Record is not necessarily done simultaneously with each report as this depends on what the circulating nurse is doing at the time. Also, it does not always happen that the circulating nurse announces "out loud" the number she has counted or the total she has calculated— she may simply state that the count is correct or incorrect.[1] In either event, so Beverly Gray the circulating nurse testified, "I announce that the sponge count is correct," and, if so, "it's taken as being correct."

1. If the total closing lap sponge count is declared by the circulating nurse to be a number not divisible by six, this should alert everyone that the count is incorrect as the lap sponges come in packages of six.

Insofar as it pertains to the beginning and closing counts at the gall bladder opera- tion, the Operating Room Record written by the circulating nurse, stated:

| "Beginning | | | | SPONGE COUNT RECORD | | Closure | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Lap Sponges | 4 x 4 Sponges | Peanuts | Others | Lap Sponges | 4 x 4 Sponges | Peanuts | Others |
| 6 | | | | 8 | 1 | | |
| 6 | 10/ | | | 8/ | 9/ | | |
| 6/ | 10 | | | 16 | 10 | Correct | |
| 18 | | | | | | | |

| Counted by | M. Ritzman | Counted by | M. Ritzman |
| --- | --- | --- | --- |
| | R. Sidenstriker | | B. Gray RN" |

In their role as appellants, plaintiffs' first point in their brief is that the trial court erred in entering judgment for Dr. Wooldridge "for the reason that the verdict rendered by the jury was against the weight of the evidence." It is trite to repeat again that simply declaring the verdict is against the weight of the evidence preserves nothing for appellate review because appellate courts, unlike trial courts, do not weigh the evidence in jury tried cases. State ex rel. St. Hy. Com'n v. Twin Lakes Golf Cl., Inc., 470 S.W.2d 313, 315 [3] (Mo.1971). However, a complimentary look at the argument portion of the brief on this point indicates plaintiffs' position is predicated upon the conclusions that plaintiffs "made a prima facie case of negligence against Defendant Wooldridge" and that the sponge counting "was the joint responsibility of nurse Gray and nurse Ritzman." As to the first conclusion, the making of a prima facie case does not per se entitle plaintiffs to a favorable verdict or to a new trial at the hands of an appellate court. The jury, in the first instance, was the sole judge of the credibility of the witnesses and the weight to be given to their testimony; the jury had leave to believe none, part, or all of the testimony of any witness [Haymes v. Swan, 413 S. W.2d 319, 327 [18] (Mo.App.1967)] and even could disbelieve the testimony of witnesses which went unimpeached and uncontradicted. Mayer v. Orf, 404 S.W.2d 733, 735 [3, 4] (Mo.1966). In the second instance, since an appellate court may not weigh the evidence, it cannot award a new trial simply because a prima facie case was made. If by the second conclusion, supra, plaintiffs are suggesting Dr. Wooldridge could have responsibility because of some vicarious liability imputed to his employee through a joint adventure or enterprise undertaken with the circulating nurse in counting sponges on closure, it is enough to observe that such a theory was neither pleaded nor submitted by plaintiffs. Theories which might have been pleaded and submitted but which were not, are deemed abandoned. Murphy v. Deksnis, 476 S.W. 2d 150, 153 [6] (Mo.App.1972). Plaintiffs are to be judged on the issues they plead and submit [Green v. Sutton, 452 S.W.2d 200, 206 [2] (Mo.1970)] and in this case these did not embrace joint adventure or enterprise.

Preserving allegation of instruction error for appellate review requires that specific objections to the instructions be made either before submission, or partly before submission and partly in the motion for new trial, or wholly within the new trial motion. Rules 70.02, 79.01 and 79.03 V.A.M.R.; Bremer v. Mohr, 478 S.W.2d 14, 19 (Mo.App.1972). Nonetheless, if instruction errors that are urged on appeal differ from and were not included in the specific objections made to and overtly determined by the court nisi, they may not be reviewed by an appellate court for "no allegations of error shall be considered in any civil appeal from a jury tried case except such as have been presented to or expressly decided by the trial court." Rule 84.13(a). Plaintiffs, in the second and last point relied on in their brief, complain of Dr. Wooldridge's instructions 7 and 9 "for the reason that [plaintiffs' two] verdict di-

recting instruction[s] were on the same theory of recovery and defendant was only entitled to one converse instruction." Quite foreign to this point, plaintiffs' only trial objections to instructions 7 and 9 were in their motion for a new trial wherein their identical objections were that "the Court erred in giving Instruction No. 7 [No. 9], a verdict directing instruction, since it was admitted by all the parties that Nurse Gray was agent of Defendant St. John's Hospital; that Nurse Ritzman was agent of Defendant Wooldridge; that both were acting within the scope of their employment, and that they had an equal obligation in the sponge count; that said instruction permitted the jury to make a finding not supported by the evidence." We are uncertain as to the meaning of these objections; instructions 7 and 9 (MAI 33.02(4) modified), respectively, conversed plaintiff Ned Robinson's verdict directing instruction 6 and the plaintiff wife's verdict directing instruction 8 against Dr. Wooldridge, and neither instruction 7 nor 9 were verdict directors as stated in the motion for new trial. But regardless of our inability to understand the meaning of plaintiffs' objections made in their new trial motion, the objections presented to the trial court did not encompass the objection now urged on appeal. Ergo, the second point in plaintiffs' brief has not been preserved for appellate review [Wolfe v. Harms, 413 S.W.2d 204, 213 [17] (Mo.1967)] as neither before instructions 7 and 9 were given nor in the new trial motion did plaintiffs complain that defendant Wooldridge was entitled to only one converse instruction. Stahlheber v. American Cyanamid Company, 451 S.W.2d 48, 63 [13] (Mo.1970).

We turn now to the appeal claims of defendant St. John's Medical Center, which are two in number. In substance, the first point contends the verdict for one defendant (Dr. Wooldridge) and against the other (St. John's) "cannot stand because of their mutual inconsistency" since the two sponge counting nurses were "engaged in a joint activity concerning which there was concerted action and a common duty so that they (and their masters, vicariously) were equally responsible and the failure of one was a failure of both and the masters of each should be held jointly and severally liable by one judgment." The second point concerns the refusal of the trial court to direct a verdict for St. John's; it is claimed this was error because the jury could only find one counting nurse negligent and the other blameless "by speculation, conjecture, guesswork and surmise, inasmuch as there was no evidence regarding which of the nurses, or both, had miscounted" and because "the mere writing of an erroneous figure on the Operating Room Record could not cause the laparotomy sponge to be left in the plaintiff Ned Owen Robinson."

■ Irrespective of the desires of his adversary and if the evidence warrants, each party is entitled to have his theory of the case submitted to the jury. 88 C.J.S. Trial § 301 b., p. 816. Plaintiffs' submitted theory was either (1) that the hospital was liable because the negligence of its nurse was a proximate cause of the injury and damages, or (2) that the doctor was liable because the negligence of his nurse was a proximate cause of the injury and damages, or (3) that the concurrent or successive negligence of the two independently acting nurses combined to form a proximate cause of the injury and damages thereby making their employers jointly and severally liable for all damages directly and proximately resulting from such negligence. Daniels v. Dillinger, 445 S.W.2d 410, 413 (Mo.App.1969). The only instructions proffered by St. John's were converse instructions (MAI 33.02(4) modified) similar to those offered and given on behalf of Dr. Wooldridge; St. John's did not request an instruction that would permit the jury to find against both defendants on the theory (if believed) that the negligence of one nurse was imputable to the other. If defendant St. John's had such a theory and evidence to warrant an instruction thereon, it was its duty to request the charge [Hop-

kins v. St. Louis Public Service Company, 382 S.W.2d 442, 448 [7] (Mo.App.1964)] and its failure to do so constituted a waiver of that theory. Murphy v. Deksnis, supra, 476 S.W.2d at 153 [6].

 In urging that the sponge counting on closure was a "joint effort" or perhaps a joint adventure or joint enterprise on the part of the two nurses, we are reminded of the Operative Procedure Manual published by St. John's which, in rather general terms, prescribed the duties of the scrub nurse and circulating nurse in counting sponges on closure. We are not called upon to determine if the manual was admissible evidence because it was received without objection. Nevertheless, the manual itself would not serve to absolutely establish the existence of a joint enterprise or adventure as a matter of law or conclusively as a matter of fact; neither would it constitute absolute or conclusive evidence of the proper standard of care in the circumstances [Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 348 F.Supp. 969, 977 (W.D.Mo.1972); 29 Am.Jur.2d, Evidence, § 891, pp. 998–999; 57 Am.Jur. 2d, Negligence, § 273, pp. 662–663] and violation thereof could not constitute actionable negligence unless it was a proximate cause of the casualty. Grissom v. Handley, 410 S.W.2d 681, 689 [13] (Mo.App. 1966). Of course, the establishment of a joint effort, adventure or enterprise sufficient to create imputable negligence depends, among others, on whether joint control exists over the subject matter thereof or property engaged therein. State ex rel. McCrory v. Bland, 355 Mo. 706, 711, 197 S.W.2d 669, 672 [4] (banc 1946); Greer v. McCrory, 192 S.W.2d 431, 439 (Mo.App. 1946). Because it is undisputed that nurse Ritzman was not physically permitted in the non-sterile field and nurse Gray was not physically permitted in the sterile field of the operating room to count sponges upon closure, we doubt the whole evidence would permit the inference that each together with the other possessed joint control or the right of joint control over

sponge counts undertaken in an area where she was not allowed. But as before stated, this need not be determined here as St. John's did not submit such a theory to the jury and we cannot declare the existence of a joint enterprise in this instance as a matter of law. Matta v. Welcher, 387 S. W.2d 265, 271 (Mo.App.1965).

 To avoid making this another prolix opinion by demonstrating the inapplicability to the present situation of the authorities cited by defendant St. John's, we believe the core of this case reposes in the matter of causation. The mere fact that injury follows negligence does not in and of itself create liability [Daniels v. Smith, 471 S.W.2d 508, 512 [7] (Mo.App. 1971)], for to be actionable, negligence must be a proximate cause of the injury. Shelton v. Bruner, 449 S.W.2d 673, 679 [3] (Mo.App.1969). Whether a negligent act is a proximate cause of injury depends upon the facts presented in each individual case [Bowman v. Heffron, 318 S.W.2d 269, 274 [5] (Mo.1958)] and what is a proximate cause is ordinarily a jury question. Pollard v. General Elevator Engineering Company, 416 S.W.2d 90, 95 [2] (Mo.1967). In partial agreement with St. John's, it does not appear a jury would be compelled to the conclusion that the mere fact a written sponge count error was contained in the Operating Room Record was a proximate cause of the injury as there was no evidence that the surgeon, the person responsible for closing, relied on or even saw the *written* record. Likewise, we agree that on the basis of the evidence presented and short of speculation, there is no certain way to determine whether an inaccurate count was, in fact, made, and, if so, which nurse made the mistake or whether both may have miscounted. However, it does not seem to us that discovery of whether an actual counting error was made, or by whom, was essential before the jury could resolve the problem of causation. Among the many factors to be considered by one intent on determining proximate cause is the individual duties of

the involved parties. Boyd v. Terminal Railroad Association of St. Louis, 289 S. W.2d 33, 38 (Mo.1956). No one contradicts that it was the circulating nurse's duty to announce whether or not the closing sponge count was correct and if she proclaimed the count "correct" it was "taken as being correct." Therefore, we are of the opinion the jury could and probably did conclude that the announcement of the circulating nurse (the hospital's employee) that the closing count was correct with the beginning count, was negligence which constituted a proximate cause for a lap sponge being left in plaintiff Ned Robinson. Irrespective of the accuracy or inaccuracy of the information possessed by the circulating nurse from whatever source, it was evident that the beginning and closing counts did not correspond so that her negligence in announcing that the closure count was correct was a proximate cause of the injury. In other words, even though it is assumed arguendo the counts available to the circulating nurse were for any reason inaccurate, the two counts were not in equipoise and she erred and was negligent in declaring they were. Thus it is apparent that the failure of the circulating nurse to correctly announce the sponge count on the figures she had at hand could have been found by the jury to have been a proximate cause of the closure with a lap sponge inside Ned Robinson and plaintiffs' damages.

The judgment is affirmed.

### Addendum

By its Answer, St. John's declared that its proper name is "St. John's Medical Center, Joplin, Missouri, it being an Amended Pro Forma Decree Corporation." The jury's verdicts were returned against "defendant St. John's Medical Center" and the judgment was likewise entered against "St. John's Medical Center" in favor of both plaintiffs. Although the notices of appeal, transcript on appeal, and briefs of the parties erroneously continue to refer to defendant as "St John's Hospital of Joplin," we see no cause to perpetuate the error and have directed our clerk to show on the court's records the correct name of the defendant St. John's. If the Circuit Court of Jasper County has not already amended its records to reflect the true and correct name of defendant St. John's, it is hereby directed to do so forthwith.

All concur.