**Exie Belle FIELDS and Dave Fields, Plaintiffs-Respondents,**

v.

**Opal BERRY, Defendant and Third-Party Plaintiff, Appellant-Respondent,**

v.

**FRANK SCOTT, INC., Third-Party Defendant-Appellant,**

**and**

**Chrysler Corporation, Third-Party Defendant.**

**Nos. 9788, 9790.**

Missouri Court of Appeals, Springfield District.

Feb. 17, 1977.

Opinion Modified on Court's Own Motion.

Motions for Rehearing or Transfer Denied March 29, 1977.

Application to Transfer Denied May 10, 1977.

L. R. Buehner, Buehner & Buehner, Joplin, for appellant-respondent Opal Berry.

William H. Burden, Jr., Joplin, for respondents Fields.

Jon Dermott, Ronald E. Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for appellant Frank Scott, Inc.

Before STONE, P. J., and HOGAN and TITUS, JJ.

HOGAN, Judge.

These cases arose out of an automobile accident which occurred in Newton County on June 3, 1966. Pleading their cause under the res ipsa loquitur doctrine, plaintiffs Exie Belle and Dave Fields sought to recover damages from defendant Berry 1) for personal injuries sustained by plaintiff Exie Belle, and 2) for loss of consortium sustained by plaintiff Dave Fields. Plaintiffs' amended petition was filed on August 24, 1967. On March 13, 1970, with leave of court, defendant Berry impleaded third-party defendants Scott and Chrysler pursuant to Rule 52.10 (now 52.11), V.A.M.R. The theory of the third-party petition was that

third-party defendants Scott and Chrysler were or might be liable to defendant Berry as supplier and manufacturer, respectively, of a defectively manufactured product, specifically, Berry's automobile. The third-party defendants answered separately; third-party defendant Scott filed a cross-claim against Chrysler and Chrysler filed an answer thereto. All the issues tendered by the pleadings were tried together before a jury on April 23, 1974, and the jury resolved those issues by finding 1) for plaintiff Exie Belle Fields and against defendant Berry in the sum of $10,000; 2) for plaintiff Dave Fields and against defendant Berry in the amount of $500; 3) for third-party plaintiff Berry and against third-party defendant Scott in the amount of $10,500; 4) for third-party defendant Chrysler and against third-party plaintiff Berry; 5) for third-party defendant Chrysler on the cross-claim interposed by third-party defendant Scott. Defendant Berry appeals from the judgment rendered against her on the main claim; third-party defendant Scott appeals from the judgment rendered against it on the third-party claim. We ordered the appeals consolidated for argument and shall consider them together.

Capsulated, the facts are that the accident happened between 8:30 and 9:00 p.m. on Highway 71 between Neosho and Joplin. Plaintiff Exie Belle Fields, defendant Berry and one Naomi Brown had been to a revival meeting at Neosho and were returning to Joplin where they lived. Defendant Berry was driving; Mrs. Brown was seated to the driver's right in the front seat and plaintiff Exie Belle was sitting in the rear seat behind Mrs. Brown. Exie Belle testified that the weather had been warm and fair "that day", that there had been no rain, and that the accident occurred "about dusk".

Highway 71, at the scene of the casualty, is 22 feet wide from curb to curb, with a 12-foot shoulder on either side. The road runs "sort of [at] an angle", according to the investigating officer, but was described for convenience (at counsel's suggestion) as running north and south. The place of the accident was, again according to the inves-

tigating officer, "approximately one mile or so" "towards Joplin", i. e., north of the Deem Hatfield Grocery Store. From the Hatfield Grocery Store north to the place of the accident, Highway 71 curves about three or four times, with some "straight-a-ways" in between.

As we follow the sequence of events, defendant Berry "rounded" one of the several curves and was driving north when she turned aside to her right, either to avoid an object on the road, or to make room for a truck which was attempting to pass on her left. Part of the Berry automobile went off the highway onto the shoulder. There is some indication that the road "drops off" between the roadway and the shoulder, but in any event, defendant Berry managed to turn back onto the roadway. Thereafter, for whatever reason, she lost all control over her vehicle, skidded 240 feet diagonally across the highway and down an embankment and finally struck a tree 42 feet west of the west edge of the highway. Plaintiff Exie Belle was injured. The extent and nature of her injuries are not in issue here.

On the appeal from the judgment on the main claim, the only issue presented is whether plaintiffs' proof so specifically and directly established the precise cause of the accident as to preclude application of the res ipsa loquitur doctrine. Defendant does not question the general rule that loss of control or failure to control the movement of an automobile so that it leaves the highway, strikes a fixed object and causes injury permits an inference of negligence on the part of the driver. *Lindsey v. Williams,* 260 S.W.2d 472, 474–475 (Mo.1953), cert. den. *Williams v. Lindsey,* 347 U.S. 904, 74 S.Ct. 428, 98 L.Ed. 1063 (1954); *Tabler v. Perry,* 337 Mo. 154, 165–167, 85 S.W.2d 471, 476–477 (1935); *Silver v. Curtis,* 490 S.W.2d 412, 414 (Mo.App.1972); *Collins v. Nelson,* 410 S.W.2d 570, 573 (Mo.App.1965); *Wells v. Asher,* 286 S.W.2d 567, 568 and cases cited n. 1 (Mo.App.1955). She says, rather, that the precise cause of the casualty was directly shown by plaintiffs' evidence, and of course if that is the case, the court erred in submitting the cause under the res ipsa

loquitur doctrine. *Williams v. St. Louis Public Service Co.,* 363 Mo. 625, 633, 253 S.W.2d 97, 101–102 (banc 1952); *Rea v. St. Louis-San Francisco Ry. Co.,* 411 S.W.2d 96, 99 (Mo.1967). In this connection, however, two corollary rules should be noted. First, even though a plaintiff's evidence may tend to show the specific cause of the accident, he will nevertheless not lose the benefit of the res ipsa loquitur doctrine, nor be deprived of the right to rely on it in the submission of his case, if, after the evidence is in, the true cause is still left in doubt or is not clearly shown. *White v. St. Louis Public Service Co.,* 364 Mo. 111, 118, 259 S.W.2d 795, 799 (banc 1953); *Wells v. Asher,* supra, 286 S.W.2d at 569 and cases collated n. 3. Second, a plaintiff may not be denied the benefit of the res ipsa loquitur doctrine merely because the evidence would support a verdict in his favor based upon specific negligence which could be *inferred* from the plaintiff's evidence without the aid of the res ipsa loquitur doctrine. *White v. St. Louis Public Service Co.,* supra, 364 Mo. at 118, 259 S.W.2d at 799; *Williams v. St. Louis Public Service Co.,* supra, 363 Mo. at 633, 253 S.W.2d at 101–102.

In particular, our attention is called to the following evidence: 1) plaintiffs' statement that after the Berry car left the road on the right side, it returned to the highway and went "back and forth" until it finally went off the road; 2) testimony which, defendant says, indicated that the car made a "zigzagging" movement and that its speed was accelerated just before it went off the pavement; 3) testimony which indicates that defendant failed to apply her brakes properly. Defendant also argues that the length of the skidmarks found at the scene establishes excessive speed as the specific cause of the accident. Additionally she maintains that parts of her pretrial deposition, introduced as admissions, establish that her loss of control and excessive speed were the specific causes of the accident.

■■ We agree that plaintiffs' evidence shows beyond doubt that the Berry automobile went out of control. A showing of loss of control, however, is merely a showing of general, not specific negligence, see *Myers v. Buchanan,* 333 S.W.2d 18, 21 (Mo. banc 1960); *McIntyre v. Whited,* 440 S.W.2d 449, 451 [2, 3] (Mo.1969), and it is this very loss of control which gives rise to an inference of negligence here and permits plaintiffs to take advantage of the res ipsa loquitur doctrine. *Tabler v. Perry,* supra, 337 Mo. at 166–167, 85 S.W.2d at 477–478[11, 12]. As for the testimony that defendant Berry's automobile went back and forth across the road before it left the highway, that it made a "zigzagging" movement and that defendant Berry accelerated her speed just before it plunged down the embankment, it seems to have been *counsel's* suggestion, rather than plaintiffs' positive testimony, that the Berry automobile made a "zigzagging" movement before it left the road.[1] Plaintiffs' testimony that defendant increased her speed before she finally left the highway is really only an impression.[2] We conclude that the evidence concerning the crisscrossing movement of the Berry automobile and the testimony that the speed of the vehicle "seemed" to increase before the car left the highway in no way tend to preclude a res ipsa loquitur submission. Plaintiff Exie Belle was testifying to conclusions and results, not as to specific facts, acts or conduct which produced those results, and her testimony was not such as to demonstrate the specific negligence which caused the accident. *White v. St. Louis*

1. On cross-examination, defendant's counsel, examining plaintiff, asked: "Q. And then did she return to the highway with her car, did she pull it back on the highway? A. Yes. Q. Now did she go back and forth with the car during this time before she finally went off the road? A. Yes."

2. Counsel for third-party defendant Scott asked: "Q. Now, Mrs. Fields, when the automobile went off on the right shoulder, can you state whether the car slowed at all, did it slow down any? A. No, it *seemed* like it got faster to me, *I don't know.* Q. All right, it seemed like it went faster after it went off on the shoulder of the road? A. After it got back up on the road off the shoulder. Q. Did it continue across the highway? A. It kinda, you know, zig-zagged."

*Public Service Co.,* supra, 364 Mo. at 118–119, 259 S.W.2d at 799[7].

Defendant's argument that the evidence shows her failure to apply the brakes caused the accident is simply confusing, so far as we are concerned. The testimony to which our attention is called again appeared upon plaintiffs' cross-examination by counsel for third-party defendant Scott. Counsel asked plaintiff if defendant Berry ever applied her brakes "from the time the automobile first left the highway until it came to a stop" and plaintiff answered "I don't know." Counsel then put the same question slightly differently, and plaintiff answered that she couldn't remember. To reiterate, the evidence indicates most strongly that after defendant Berry initially turned aside to her right, for whatever reason, and turned back onto the roadway, she lost control of her automobile. However, we certainly could not say that application of the brakes at a particular time or in a particular manner would have caused her to regain control; it might have had the opposite effect. This particular argument is patently without merit. *Lindsey v. Williams,* supra, 260 S.W.2d at 475.

■ Defendant Berry further argues that the presence of skidmarks establishes the specific negligence which caused the accident. The investigating officer, Trooper Keller, testifying from a report prepared nearly eight years earlier, said that when he arrived at the scene of the accident, he saw "a 1966 Dodge sedan that was on the south side of the highway, which had plunged down an embankment and struck a tree", and he added that "the vehicle was traveling west or northwest, was rounding a curve and had ran [sic] off of the highway on the right hand side onto the shoulder and veered back across the highway and plunged off of the embankment, striking a tree." The trooper measured 240-foot skidmarks running from the area near where defendant Berry initially turned aside to the point where she went over the embankment. It is not clear, however, from the remainder of his testimony whether the skidmarks were all on the highway or part-

ly on and partly off the highway. His cross-examination on behalf of third-party defendant Chrysler ran as follows: "Q. You have diagramed for us skidmarks and  .  . as I understand your testimony, they are 240 feet long, is that correct? A. Yes, sir. Q. And the car itself  .  .  . stopped some distance beyond the end of those skidmarks, is that true? A. Yes. Q. In other words, the skidmarks did not lead all the way down this embankment? A. That is true.  .  .  . Q. Did [those skidmarks] lead to where that car, Mrs. Berry's car, was found by you on the day of this accident? A. Yes, sir." Trooper Keller also testified that the skidmarks did not "zigzag" but traced a continuous line. Skidding to the wrong side of the road creates an inference of negligence as *Friederich v. Chamberlain,* 458 S.W.2d 360 (Mo. banc 1970), and *Silver v. Curtis,* supra, 490 S.W.2d at 414–415, demonstrate, but the presence of skidmarks does not prove the specific negligence which caused the automobile to begin skidding; the inferable negligence here is the loss of control or failure to control the movement of the car. The presence of skidmarks did not preclude the res ipsa loquitur submission. *Lindsey v. Williams,* supra, 260 S.W.2d at 474–475[1]; *Silver v. Curtis,* supra, 490 S.W.2d at 414–415[2].

Finally, defendant Berry argues that parts of defendant's deposition offered by plaintiffs establish inattention, excessive speed and failure to control her car as specific acts which caused the casualty. This contention simply overstates the record. The only point about which defendant Berry was sure was that when she "came back up", i. e., returned to the highway after she turned aside to the right, "then [my car] started zigzagging". There is no proof that defendant Berry was traveling at an excessive speed; there is in fact no direct proof of the lawful speed limit on Highway 71 at the time.

■ We decline to go over the plaintiffs' evidence line by line; we have carefully examined the record and conclude that their proof leaves the true cause of the

casualty in doubt. Such being the case, the res ipsa loquitur submission was proper, even though plaintiffs' evidence might have supported a verdict in their favor had the cause been submitted on specific acts of negligence which could have been inferred from the circumstances.

■ The appeal by third-party defendant Scott remains for discussion. The theory upon which Scott and Chrysler were impleaded was that they were liable to indemnify defendant Berry because Berry's car had been defectively manufactured. The third-party petition pleads a specific defect, "a defective return oil hose fitting to the power steering pump" of Berry's vehicle. The petition further alleges that because of the pleaded defect, Berry's automobile did not work properly and was unsafe for its intended use and directly caused the casualty and injuries sustained by the plaintiffs. Berry's theory of recovery was severely limited, however, by her verdict-directing instruction tendered in connection with the third-party claim; that instruction predicates recovery upon a finding that Berry was negligent in reacting, immediately prior to the accident, to a difficulty in steering resulting from the defective power steering pump. Plaintiff's submission upon this ground amounted to an abandonment of all other theories of recovery, *Guthrie v. City of St. Charles,* 347 Mo. 1175, 1184, 152 S.W.2d 91, 95[4] (banc 1941); *Branstetter v. Gerdeman,* 364 Mo. 1230, 1237, 274 S.W.2d 240, 245 (1955); *Robinson v. St. John's Medical Center, Joplin,* 508 S.W.2d 7, 12–13[11] (Mo.App.1974), and we have the view that the trial court should have sustained Scott's after-trial motion for judgment n.o.v.

■ The appeal from the judgment on the third-party claim has been extensively briefed. Appellant Scott argues that Berry was actively negligent and was not, therefore, entitled to indemnity from Scott as a matter of law. Berry argues, among other things, that since our Supreme Court's decision in *Keener v. Dayton Electric Manufacturing Co.,* 445 S.W.2d 362 (Mo. banc 1969), the negligence of a manufacturer or suppli-

er must be characterized as continuing, "active" negligence because Scott's and Chrysler's duty to her is characterized as "strict" liability. We have examined the cases she cites, particularly those from Illinois, but to this writing our courts have consistently refused to accept any rule of disproportionate duty as a basis for allowing indemnity among concurrent tort-feasors. Cf. *Union Electric Co. v. Magary,* 373 S.W.2d 16, 20 (Mo.1963). Scott argues that because the third-party plaintiff was found negligent in the main action, she could not be found otherwise on the third-party claim. Such is not the case; Scott relies primarily on *State ex rel. Siegel v. McLaughlin,* 315 S.W.2d 499 (Mo.App.1958), but in *Crystal Tire Co. v. Home Service Oil Co.,* 525 S.W.2d 317 (Mo. banc 1975), the court held that a finding of negligence upon a res ipsa loquitur submission did not establish the character of the defendant's negligence as active or passive, and indicated, as it had previously indicated in *Page v. Hamilton,* 329 S.W.2d 758 (Mo.1959), that in a case of this kind, the verdict in the main action would not conclude the defendant as third-party plaintiff in the ancillary third-party action. We do not believe, however, that either the *Keener* case or the *Crystal Tire* case is controlling here.

■ It may be acknowledged that the law governing indemnity between concurrent tort-feasors is changing rapidly, and that the decisions cannot be easily reconciled, but extensive abstract discussion is neither necessary nor useful. The third-party plaintiff does not contend, nor could she, that she has any right of indemnity if she has been actively negligent in contributing to the injury for which recovery was had. *Union Electric Co. v. Magary,* supra, 373 S.W.2d at 22[3]; *Lewis v. Amchem Products, Inc.,* 510 S.W.2d 46, 48 (Mo.App. 1974). Nevertheless, the very language of the submission she chose requires a finding that she was *negligent* in managing a defectively manufactured vehicle. Although the case is factually dissimilar, we believe *Hofstra v. Schriber,* 475 S.W.2d 44 (Mo. 1972), clearly stands for the proposition that

a positive violation of the rules of the road constitutes "active" negligence; therefore, a finding that Berry's reaction to a steering difficulty was negligent—a failure to exercise the highest degree of care as required by § 304.010, para. 1, RSMo Supp. 1975— would in itself defeat her recovery.

For the reasons indicated, the judgments for plaintiffs Exie Belle Fields and Dave Fields and against defendant Opal Berry are affirmed; the judgment for third-party plaintiff and against third-party defendant Scott is reversed. The cause is remanded with directions to enter a judgment for Scott upon the third-party claim.

All concur.